[Crim. No. 807. Second Appellate District, Division Two.—June 21, 1922.]

THE PEOPLE, Respondent, v. ALBERT SICHOFSKY, Appellant.

[1] CRIMINAL LAW—DENIAL OF MOTION IN ARREST OF JUDGMENT—APPEAL.—An order denying a motion in arrest of judgment is not appealable.

[2] ID.—CONVICTION IN FEDERAL COURT—CONSENT TO ASSUMPTION OF JURISDICTION BY STATE COURT.—After conviction of a crime by the United States district court, but prior to the commencement of execution of the sentence imposed, that court is the sole agency possessing authority to give consent, on behalf of the United States, to the assumption by a state court of control of the body of the defendant, for the purpose of trial for a state law violation; and where such consent is given and the defendant is produced in the state court, by and in the custody of the United States marshal, and is personally present there, with full opportunity to make his defense, jurisdiction of his person is had by the state court exactly as if he had been brought before that court by its own officer.

[3] ID.—LARCENY—DELIVERY OF PROPERTY TO DEFENDANT—INTENT.— The complaining witnesses not having intended to part with the ownership of the money at the time it was delivered to the defendant, and the defendant not having come into the possession thereof honestly, he having had from the beginning the intention to obtain it for the purpose of fraudulently appropriating it to his own use, the crime committed was larceny and not embezzlement or obtaining money under false pretenses.

58 Cal. App.—17

[4] ID.—POSSESSION OF PROPERTY—CONVERSION—INTENT—EMBEZZLE-MENT—LARCENY.—Where one honestly receives the possession of goods upon a trust, and, after receiving them, fraudulently converts them to his own use, it is a case of embezzlement; but where the possession has been obtained through trickery or deceit, with the intent at the time the defendant receives the goods to convert them to his own use, and the owner of the goods parts merely with the possession, and not with the title, the offense is larceny.

[5] ID.—INTENT OF DEFENDANT IN OBTAINING PROPERTY—QUESTION FOR JURY—EVIDENCE—FINDING.—It is a question for the jury to decide whether the defendant obtained possession of the money of the complaining witnesses fraudulently, with the intent at the time he received it to convert it to his own use, and whether the complaining witnesses intended to part with the ownership at the time of delivery; and where the jury has found those matters adversely to the defendant's contention, and there is ample evidence to sustain the jury's conclusion, it will not be disturbed on appeal.

[6] ID. — THEFT OF SEVERAL ARTICLES — OWNERSHIP — ONE CRIME. — Where several articles are stolen at the same time and from one place, the offense may be charged as one crime and in a single count, even though the ownership is in different persons.

[7] ID.—TAKINGS FROM SEVERAL OWNERS—FRAUD AND DECEIT—DISTINCT LARCENIES.—The takings from several owners do not constitute a single act where, as in this case, the larceny is perpetrated by means of fraud and deceit practiced upon each owner; and in such a case the defendant may be prosecuted and punished for each taking as a separate and distinct larceny.

[8] ID.—EVIDENCE—RESTRICTION OF CROSS-EXAMINATION.—While the right of cross-examination, where it is being used in good faith for the purpose of eliciting the truth from a reluctant, evasive, or interested witness, should be allowed with great liberality, the court may always restrain the examination whenever it becomes apparent that time is being needlessly consumed by a tedious or frivolous questioning of the witnesses.

APPEAL from a judgment of the Superior Court of Los Angeles County. Sidney N. Reeve, Judge. Affirmed.

The facts are stated in the opinion of the court.

Cooper, Collings & Shreve for Appellant.

U. S. Webb, Attorney-General, and John W. Maltman, Deputy Attorney-General, for Respondent.

6. Right to convict for several offenses growing out· of same facts, notes, 20 Ann. Cas. 873; 31 L. R. A. (N. S.) 693.

FINLAYSON, P. J.—In an indictment containing four counts defendant was charged, in the first count, with the larceny of three thousand dollars, the property of O. M. Justice; in the second, with the embezzlement of the same three thousand dollars; in the third, with the larceny of four thousand five hundred dollars, the property of S. Levin; and in the fourth, with the embezzlement of the same four thousand five hundred dollars. He was acquitted of the embezzlement charges and was convicted of the two larceny charges. A separate judgment was entered upon each conviction. From those judgments and an order denying his motion for a new trial he now appeals. [1] He also appeals from an order denying his motion in arrest of judgment, but as that order is not appealable, the appeal therefrom must be dismissed.

It was the theory of the prosecution that though defendant obtained possession of the moneys with the consent of · the owners, their consent was obtained through deceit practiced by defendant, and that therefore the larceny was perpetrated by means of fraud and trickery. The case as disclosed by the witnesses for the people is, briefly, as follows: Defendant, posing as a Polish count who had but recently arrived in Los Angeles from the republic of Mexico, represented to the complaining witnesses, Levin and Justice, both of whom were physicians practicing their profession in the city of Los Angeles, that he had some friends in Mexico who held a lease on a parcel of valuable oil property at Huntington Beach; that his Mexican friends wanted to dispose of their lease; that it could be obtained through a Mexican who lived upon the land and who would execute the necessary documents; that defendant's friends in Mexico wanted him to sell the lease for them; that it could be purchased for seven thousand five hundred dollars, but that if the complaining witnesses wished to buy it they must act quickly. It finally was agreed that Dr. Levin would contribute four thousand five hundred dollars toward the purchase of the lease and that Dr. Justice, the other complaining witness, would contribute the balance of the purchase price—three thousand dollars. Defendant told Doctors Levin and Justice that they ought to give him the seven thousand five hundred dollars in cash, to be paid by him to his Mexican friends, as money would impress the

Mexicans and there were many persons trying to buy the lease. It was agreed that the purchase money would be given to defendant as the agent of the prosecuting witnesses and also as the representative of defendant's Mexican friends. As the result of many conversations, extending over a period of several days, defendant and the two doctors met, on the evening of November 15, 1920, at Dr. Levin's office in Los Angeles, where, after some preliminary conversation, Dr. Justice took from his pocket and handed to defendant three thousand dollars in currency, and Dr. Levin took from his safe and delivered to defendant four thousand five hundred dollars in currency. Defendant put the two amounts in his inside coat pocket and agreed with his two unsuspecting victims that he would procure the lease, signed by the Mexican who lived upon the property, that he would conduct the Mexican and his wife to a bank at Huntington Beach, that he would deposit the money in that bank, taking a receipt therefor, and that the money should remain in escrow with the bank until such time as the title could be examined by an abstract company. Shortly after the moneys were intrusted to him, defendant fled the state. He later was arrested and brought back. There are many other circumstances which need not be related tending to show that defendant was not acting in good faith. Needless to say, the gullible victims of the pseudo count's winning ways have seen neither the lease nor the money which they so guilelessly intrusted to their magnetic friend.

Appellant contends: (1) That the state courts, for reasons presently to be stated, are without jurisdiction of his person; (2) that the evidence is insufficient to justify the verdict; (3) that if any offense was committed it was embezzlement, not larceny; (4) that if the crime of larceny was committed there was but one larcenous taking, not two, and that, therefore, there should have been but one verdict of guilty and but one judgment of conviction; (5) that defendant's right of cross-examination was unduly curtailed.

The facts upon which appellant bases his contention that the court was without jurisdiction to try him are as follows: He was arraigned in the superior court for Los Angeles County on December 6, 1920. His trial in that

court was commenced on April 7, 1921, and continued until April 13, 1921, on which date he was convicted on the larceny charges. He is a citizen of Poland, and, prior to his trial in the state court, had been indicted by the federal grand jury, charged with entering the United States from the republic of Mexico without having a duly viséed passport. (See *Ex parte Sichofsky,* 273 Fed. 694.) To that charge he entered a plea of guilty in the United States district court for the southern district of California, and on March 22, 1921, was sentenced by that court to confinement in the federal penitentiary at McNeil's Island for the term of three years. The United States district court then made an order staying execution of its sentence for a period of fifteen days and directing the United States marshal to take Sichofsky to the courtroom of the superior court for Los Angeles County at such times as his presence in the case there pending against him should be required, and to keep him in custody for the purposes stated in the order. Pursuant to that order appellant was taken by the United States marshal to the superior court for Los Angeles County, and was there tried, convicted, and sentenced.

[2] There is no merit in the claim that the court *a quo* did not acquire jurisdiction of appellant's person. It probably is true, as appellant contends, that after the sentence by the federal court and until the end of his term and discharge, no state court could assume control over his body without the consent of the United States (*Ponzi* v. *Fessenden,* 258 U. S. 607 [66 L. Ed. 255, 42 Sup. Ct. Rep. 309]); but there is no force in the contention that in this case the United States attorney-general, and he only, could give such consent on behalf of the United States. Here execution of the sentence imposed by the United States district court had not commenced when that court ordered a stay of execution and directed that Sichofsky be taken to the state court at such times as his presence there should be required in the case there pending against him. As was said by the United States circuit court of appeals on Sichofsky's appeal from an order discharging the writ of *habeas corpus,* "there was no point of time, therefore, at which jurisdiction of appellant was lost" by the United States district court. (*Sichofsky* v. *United States,* 277

Fed. 762.)   This being so, the United States district court
was the sole agency possessing authority to give consent,
on behalf of the United States, to the assumption by the
state court of control of the body of appellant.   When,
therefore, appellant was produced in the state court, and
was personally present there, with full opportunity to make
his defense, jurisdiction of his person was had by the
superior court exactly as if he had been brought before
that court by its own officer.   (*Ponzi* v. *Fessenden, supra.*)

The evidence was amply sufficient to sustain the verdict.
The testimony indicates that, from the beginning, appellant
had undertaken to obtain the money from Levin and Jus-
tice ostensibly to use in paying for the purchase of the
lease, but really to convert all of it to his own use.   The
theory of the prosecution that appellant, by trickery and
deceit, fraudulently caused the prosecuting witnesses to
believe that they were parting with the possession of their
moneys for a valuable oil lease, to be purchased with the
moneys which they credulously intrusted to appellant, is
fully sustained by the evidence, which shows a bald scheme
to deceive two unsuspecting physicians by drawing them
into the snare set for them.

[3]   That the evidence shows this to be a case not of
larceny but of embezzlement is the next point made by
appellant.   The circumstances all show that neither of the
complaining witnesses intended to part with the ownership
of the money at the time when it was delivered to ap-
pellant.   At the time when the money was delivered each
complaining witness intended that appellant should receive
it for him, and that it should be carried by appellant to
the bank at Huntington Beach and there be deposited in
escrow until such time as the abstract company should
certify to the title to the lease, when, if the title should
be found to be in appellant's supposed Mexican friends, it
was to be paid to the latter as the purchase price of the
lease.   Had all this been done as intended, the moneys de-
livered to appellant would have remained in law the prop-
erties of the complaining witnesses, respectively, until final
delivery to the supposed owners of the lease.   It follows,
therefore, that it was the intention of each complaining wit-
ness that the title to the money delivered by him to appel-
lant should remain in such complaining witness, and that,

as a consequence, it was subject to larceny as his property, and that the crime could not be that of obtaining money by false pretenses. (*People* v. *Tomlinson,* 102 Cal. 23 [36 Pac. 506].) Not only did the title not pass, but appellant's possession of the money was not received honestly. Had he received the possession honestly, the offense would have been embezzlement, not larceny. (*People* v. *Tomlinson, supra.*) But as it is, the possession of the money of each complaining witness was obtained through fraud and deceit. It therefore follows that its fraudulent appropriation by appellant to his own use, he having had from the beginning the intention to obtain it for that purpose, constituted, in law, an act of larceny. (*People* v. *Delbos,* 146 Cal. 734 [81 Pac. 131]; *People* v. *Shwartz,* 43 Cal. App. 697 [185 Pac. 686].) As was said in *People* v. *Tomlinson, supra,* there must often be, on the *facts,* a very narrow margin between cases of larceny and embezzlement, because the character of the crime depends upon the secret intention of the parties, which is often difficult to ascertain; but, so far as the *law* is concerned, the principles upon which the question of guilt or innocence is to be determined are plain. [4] Where one honestly receives the possession of goods upon a trust, and, after receiving them, fraudulently converts them to his own use, it is a case of embezzlement. But where the possession has been obtained through trickery or deceit, with the intent at the time the defendant receives the goods to convert them to his own use, and the owner of the goods parts merely with the possession, and not with the title, the offense is larceny. [5] It was a question for the jury to decide whether appellant obtained possession of the money fraudulently, with the intent at the time he received it to convert it to his own use, and whether the complaining witnesses intended to part with the ownership at the time of delivery. By its verdict the jury has decided these matters adversely to appellant's contention; and as there is ample evidence to sustain the jury's conclusion, we may not disturb it.

It next is contended that if appellant was guilty of larceny there was but one larcenous taking, notwithstanding three thousand dollars was received by defendant from one complaining witness and four thousand five hundred dollars from the other. [6] The rule generally adopted is that

where several articles are stolen at the same time and from one place, the offense *may* be charged as one crime and in a single count, even though the ownership is in different persons. [7] Whether in such cases the person stealing the property of different owners at the same time and place may be prosecuted and punished as for separate and distinct offenses is a question upon which the authorities are in conflict. The author of the note to *Hughes* v. *Commonwealth,* 31 L. R. A. (N. S.) 723, says that the weight of authority holds that the person stealing from different owners at the same time may be punished for separate and distinct offenses. However, we do not find it necessary to pass upon this question. So far as our researches have gone, the cases wherein it has been held that there is but one larcenous taking and but one crime where several articles belonging to different owners are stolen at the same time and place, are all cases where the thief took the articles without the owner's consent. The reason for the rule that there is but one crime where articles belonging to different owners are stolen at the same time and place is that in such cases there is but one act of taking; and if the caption constitutes but a single act, there is but one offense. (17 R. C. L., p. 54.) Where articles stolen from different owners are located at different places, as, for example, where they are located in different rooms of the same house, each asportation with intent to steal constitutes a different offense, although the thefts may all have been committed in rapid succession and in pursuance of a formed design to steal. (*State* v. *Maggard,* 160 Mo. 469 [83 Am. St. Rep. 484, 61 S. W. 184]; *State* v. *Emery,* 68 Vt. 109 [54 Am. St. Rep. 878, 34 Atl. 432]. See, also, *Hudson* v. *State,* 9 Tex. App. 151 [35 Am. Rep. 732].) On the same principle it is held that where the thief takes articles from off the persons of different owners, the several captions do not constitute a single act, even though they be committed at practically the same time, as, for example, where the thief holds up a stage-coach and robs the several passengers. (*In re Allison,* 13 Colo. 525 [16 Am. St. Rep. 224, 10 L. R. A. 790, 22 Pac. 820]; *State* v. *Bynum,* 117 N. C. 752 [23 S. E. 219].) In the Allison case the Colorado court is careful to distinguish between the felonious taking of articles from the stage and the felonious taking

from the person of each of the several passengers traveling on the stage. In that case the court employed this language: ''Relator was not tried for robbing the stage; each of the indictments charged him with robbing a different individual passenger upon the stage. And no doubt can be entertained but that these various robberies were distinct offenses, although committed at the same place and in rapid succession. They constituted separate acts.'' *A fortiori*, the takings from several owners do not constitute a single act where, as in the instant case, the larceny is perpetrated by means of fraud and deceit practiced upon each owner. In a case such as this, a case where each of the complaining witnesses voluntarily delivered his money to the defendant with the understanding that it should be used by the latter in accordance with the representations which he previously had made to each owner, it is necessary, in order to make the act of taking larcenous, that the defendant, by his previous fraudulent deceptions, should have caused each owner to intend to part with the possession of his property and not with the title thereto. The previous fraudulent representations cannot be separated from the actual captions and asportations. The misrepresentations give color to the acts of taking and determine their larcenous character. In this case the representations which were calculated to deceive and ensnare these two physicians extended over a period of several days. They were not always made in the presence of both prosecuting witnesses. Sometimes the fraudulent representations were made to Dr. Levin without the presence of Dr. Justice, and sometimes they were made to Dr. Justice without the presence of Dr. Levin; so that when each of these gentlemen handed his money to appellant, the latter's previous conduct, the conduct which gave color to his captions and asportations and to his subsequent felonious conversions and determined their character to be larcenous, was made up of separate and distinct representations. We hold, therefore, that the taking and conversion of each sum of money was a separate and distinct transaction, and that there were two larcenies.

There is no merit in appellant's claim that he was unduly restricted in his cross-examination of the people's witnesses. His examination of these witnesses proceeded at great length. It covers a very great number of pages of the

record on this appeal. Much of it is trivial and frivolous. In the exercise of that discretion with which it is vested, the trial court very properly sought to confine the examination to such questions as would tend, in at least some degree, to throw light upon the matters under investigation and to see that the trial was not needlessly prolonged by useless cross-examination. Though not always successful in these efforts, its laudable endeavor to avoid a useless prolongation of the trial by sustaining objections to questions that could have adduced naught but frivolous trivialities was not an abuse of sound discretion. [8] While the right of cross-examination, where it is being used in good faith for the purpose of eliciting the truth from a reluctant, evasive, or interested witness, should be allowed with great liberality, the court may always restrain the examination whenever it becomes apparent that time is being needlessly consumed by a tedious or frivolous questioning of the witnesses.

The appeal from the order denying the motion in arrest of judgment is dismissed. The judgments and the order denying a new trial are affirmed.

Works, J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 17, 1922.

All the Justices present concurred.

Richards, J., *pro tem.,* and Myers, J., *pro tem.,* were acting.