[Crim. No. 1306. Second Appellate District, Division Two.—January 26, 1926.]

## THE PEOPLE, Respondent, v. ROCCO JOSEPH PEPPA, Appellant.

[1] CRIMINAL LAW — LARCENY OF CHECK — FRAUD — EVIDENCE. — In a prosecution for larceny of a check given by the complaining witness to defendant with the intention that the latter should cash the check and turn the proceeds over to a corporation in payment of stock which the complaining witness agreed to purchase from the corporation through the defendant, the jury was justified in finding defendant guilty of larceny of the check, where the evidence showed that the defendant procured possession of the check by trickery and deceit, and that at the very time when he thus succeeded in getting the check in his hands he intended, after cashing it, to convert the proceeds to his own use, and that he did so convert such proceeds to his own use.

(1) 36 C. J., p. 899, n. 34.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Arthur Keetch, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank W. Allender for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

FINLAYSON, P. J.—Defendant appeals from a judgment of conviction of grand larceny and from an order denying his motion for a new trial.

The amended information upon which the trial was had contains four counts. Upon only one of them was defendant convicted and sentenced. This count charges defendant with the larceny of a check of the value of three hundred dollars, the personal property of the complaining witness, one Bernard Erb, and alleges that it was stolen by defendant on February 24, 1925. It is claimed that the verdict convicting defendant of this charge is contrary to law and to the evidence.

There was evidence tending to establish these facts: The complaining witness, before his first meeting with defendant, was the owner of a few shares of the capital stock of the Gold Ridge Mining Company, an Arizona corporation maintaining offices in the city of Los Angeles. Two or three days before the complaining witness met defendant the latter was introduced to the secretary of the Gold Ridge Mining Company. Defendant represented to the secretary that he, defendant, was a man who had acquired experience in promoting mining corporations and that he could be of some assistance to the company in selling shares of its capital stock. He told the secretary that he knew some Italians whom he said he thought he could interest in the purchase of the company's stock. The secretary then informed defendant that while the corporation had a permit from the state of Arizona to sell in that jurisdiction five thousand shares of stock, no permit to sell its stock had been issued in California by the corporation commissioner of this state. The secretary testified that defendant had "a sort of tentative agreement" with the company to sell its stock in Arizona under the Arizona permit. Later, on February 20, 1925, at the company's office in Los Angeles, defendant asked the secretary for some of the corporation's blank certificates of stock. He told the secretary that he had succeeded in interesting in the company the Italians of whom he had spoken in his first interview with that officer, and stated that these men wanted to see "this stock." The secretary then said to defendant, "You can't use them [the certificates] in the state of California. . . . You can't sell

them." To this defendant replied, "The only thing I want to do is to show them." Thereupon the secretary delivered to defendant two blank certificates of stock. The secretary's signature was subscribed to each of these documents, but neither of them was signed by the president of the corporation. When these blank certificates were delivered to defendant the secretary told him that they "were not any good because they were not signed by the president." On the day preceding that upon which defendant thus succeeded in securing possession of these two blank certificates, i. e., on February 19th, defendant was introduced to the complaining witness at the latter's place of business in Los Angeles. He was introduced as a mining promoter who was interested in financing the Gold Ridge Mining Company. Defendant subsequently visited the complaining witness at the latter's store on the twenty-fourth day of February. This visit was made for the ostensible purpose of interesting Erb in the purchase of additional shares of the company's capital stock. Defendant falsely represented himself to be a stock salesman under a five thousand dollar bond, authorized to sell the company's stock. It would seem that upon this occasion defendant offered to sell Erb one hundred shares of the company's stock for three hundred dollars. Such an offer was evidently made and accepted, for at that time Erb gave to defendant the check for three hundred dollars, and also signed a written contract entitled "Agreement to Purchase Stock," whereby he subscribed for and agreed to purchase one hundred shares of the company's stock. The check was drawn by Erb on a Los Angeles bank and was made payable to the order of defendant, who, upon receiving the check, delivered to Erb a written receipt for three hundred dollars. It is a fair inference from all the evidence in the case that the one hundred shares for which Erb subscribed and for which he gave defendant his personal check in the sum of three hundred dollars, were represented by defendant to be, and were understood by Erb to be, a part of the company's treasury stock. Defendant did not deliver the check to the company or to any officer thereof. Instead, he indorsed it and cashed it on the day it was given to him. The money which he received from the bank on cashing the check he converted to his own use. Nor did defendant ever deliver to Erb any certificate or certificates for the one hun-

dred shares for which the latter had subscribed. A few
days after receiving the check defendant again called at
Erb's place of business. Upon that occasion he delivered to
Erb the two stock certificates which the company's secre-
tary had handed to defendant a few days previously, but
which had not been signed by the president. In each of
these certificates the words "Five Hundred" had been
written, so that each purported to be a certificate for five
hundred shares of the company's stock. But since these
pieces of paper had not been signed by the president, each
of them was utterly worthless as a stock certificate.

[1] It is difficult to determine from appellant's argu-
ment what are his specific reasons for making the broad
and comprehensive claim that the verdict is contrary
to the law and to the evidence. From the authorities cited
by him it would seem that his main reason for this con-
tention is that the evidence, so it is claimed, shows that if
any offense was committed by him it was not larceny but
the crime of obtaining the check by false pretenses. There
is no merit in the contention. From the facts as we have
stated them it is apparent that the jury was justified in
finding, as implied by its verdict, that appellant procured
possession of the check by trickery and chicanery, and that
at the very time when he thus succeeded in getting that
instrument into his hands he intended, after cashing it, to
convert the proceeds to his own use. It also appears from
the facts as we have recited them that the jury was war-
ranted in finding that Erb never intended to vest in ap-
pellant the title to the check, or to invest him with title to
the money which appellant was to receive from the bank
when he cashed the check. That instrument was not de-
livered to appellant as his property. It was delivered to him
to be used for and on behalf of Erb and for one specific
purpose, namely, to cash it at the bank and then to deliver
the money thus received to the mining company in payment
of the one hundred shares for which Erb had subscribed.
Erb was not buying stock from appellant. His agreement
with appellant was to buy the stock from the mining com-
pany through appellant. Possession of the check was de-
livered by Erb to appellant for the sole purpose of purchas-
ing this stock from the company, it evidently being Erb's
intention and belief that the proceeds of the check would be

delivered by appellant to the mining company in payment for the one hundred shares. Erb evidently intended that these acts, cashing the check and paying the proceeds to the company, should be done for him by appellant as Erb's agent. In using the check as a means to secure, and to convert to his own use, the money represented by that instrument, appellant misappropriated the check as well as the money. It doubtless is true that Erb intended that appellant should cash the check at the bank after indorsing it. This is, perhaps, the only reasonable inference which is deducible from the fact that the check was made payable to appellant's order. But even so, it does not necessarily follow that it was the money, and not the check, which was feloniously stolen by appellant. Under the circumstances here disclosed there could be a larceny of both the check and the money. As we already have stated, the check was delivered to appellant for the specific purpose of using it for Erb's benefit; and though it doubtless was Erb's intention that appellant should cash the check, it also was his intention that the latter should pay to the mining company the money thus received by appellant from the bank. The check was intended to be a link in a chain of facts terminating in the payment of the money by appellant to the company. In other words, the procuring of the check was but a step which appellant took toward procuring the money. When, therefore, appellant secured possession of the check by trickery and deceit, and with the previously conceived intent to employ it as a medium that would enable him to misappropriate its proceeds, and followed these acts with one of actual conversion of such proceeds to his own use, he was guilty of larceny of the check as well as of the money. In *People* v. *Arnold*, 20 Cal. App. 39 [127 Pac. 1062], the court says: " . . . although the evidence shows that the prosecutrix gave her check to the codefendant of appellant, it also shows without contradiction that such check was promptly cashed, and the money ($1000) obtained thereon without resort to any other trick, device or fraud than such as had resulted in procuring the check, which was but a step toward procuring the money. Under such circumstances defendant might be guilty of larceny of both the check and the money. If the check was obtained by larceny thereof, no right or title to the money was acquired thereby. In this

case, under the evidence in the record, if the defendant was guilty of a larceny of the check he was necessarily also guilty of a larceny of the money obtained thereby.''

For the foregoing reasons we are satisfied that the check was the subject of larceny by appellant, even though Erb did voluntarily give it into the latter's possession, and that the misapplication of that instrument to appellant's own base purpose, coupled with his pre-existing design to defraud Erb in the manner we have stated, constituted the crime of larceny by trickery and deceit. (*People* v. *Delbos*, 146 Cal. 737 [81 Pac. 131]; *People* v. *Arnold*, 17 Cal. App. 68 [118 Pac. 729]; *People* v. *Harold*, 17 Cal. App. 426 [119 Pac. 949]; *People* v. *Sichofsky*, 58 Cal. App. 257 [208 Pac. 340].)

The judgment and the order denying a new trial was affirmed.

Works, J., and Craig, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 25, 1926.