No. 12,221.

Sweek *v.* The People.

Decided April 15, 1929.

Messrs. RIZLEY & LOOFBOURROW, Mr. A. H. ALBERTI, Messrs. HILLYER & HILLYER, for plaintiff in error.

Mr. ROBERT E. WINBOURN, Attorney General, Mr. SIDNEY P. GODSMAN, Assistant, for the people.

*Department Two.*

MR. JUSTICE BUTLER delivered the opinion of the court.

HOMER Sweek was convicted of larceny. He was found guilty on two counts of an information; the fifth and the seventh. The fifth count charges him with the larceny of nine hides, one being the property of one person, two being the property of another person, two others being the property of a third person, and the ownership of the remaining four being unknown. The seventh count charges Sweek with the larceny of the same property, owner or owners unknown.

Eight horses and one mule were killed in a field about ten miles east of Two Buttes, in Baca county, and their hides were removed by some person or persons. This much is undisputed. The people's evidence tends to show the following facts: The defendant and two other men were seen together in the immediate neighborhood of the crime in the evening of Monday, February 6, 1928, the date the crime is alleged to have been committed. The defendant had come some 60 miles to Colorado from

Oklahoma that morning, traveling in a Chevrolet truck, equipped with a stockrack. There was a canvas wagon sheet in the truck. He returned to Oklahoma Tuesday evening in the same truck. The tracks in the soil made by the tires definitely identified this truck and enabled the under-sheriff to follow the course of the truck from the place of the crime to the place where the defendant admitted that he had stayed all night. The right rear tire had a diamond tread; the left, a Fisk. The tires on both front wheels were Dunlop tires. The tire on one front wheel was put on with one side out and the tire on the other front wheel was put on with the other side out, so that the tread on one front tire "sloped one way and the tread on the other front tire sloped the other way." The imprints made by the tires at the place where the crime was committed corresponded in every particular with the imprints made by the truck in which the defendant rode. The tracks on the ground and the condition of the carcasses indicated that the truck had been turned around and backed up to the carcass of each of the nine animals; that the carcass had been fastened to the ground by means of a crowbar driven through the carcass and into the ground, and that the truck probably was used to pull the hide off the animal. There were seen in the truck in which the defendant was riding a crowbar and some animal hides. The witness could not tell how many hides were there. The animals had been shot, and empty cartridge shells were found near the carcasses, and a cartridge shell of the same caliber and make was found at the place where the defendant admitted that he had stopped over night. In the same field where the carcasses lay a witness found a chain and bloody overalls; also a cap in which was the name of a clothing company at Woodward, Oklahoma.

It appears from the testimony of his own witnesses that the defendant lived in and around Woodward. A witness who saw the defendant in the vicinity of the carcasses on Tuesday, February 7, testified that the defend-

ant told him there that he (the defendant) was skinning the animals that were struck by lightning. All of the evidence, both that introduced by the people and that introduced by the defendant, was to the effect that the animals had been shot. The defendant said to the witness that he did not know to whom the horses belonged, but that he was getting the hides. The witness then asked the defendant what hides he was claiming. The defendant answered, "Dan Davis's hides and the Dodge hides." Davis and Dodge both testified that they never had given the defendant permission to take the hides. There was a dead horse there that had not been skinned, and the defendant said to the witness that he believed he would just skin this horse, whereupon the witness remarked, "I wouldn't have a hide in my possession without a bill of sale to it in Colorado—another fellow's brand on it." The defendant left without skinning the horse.

At the extradition hearing before the Oklahoma Governor, the defendant testified that he had bought those hides in Oklahoma and had sold them on Wednesday, February 8, to Mr. Chambers. Mr. Chambers is a merchant at Woodward, Oklahoma, who buys produce and hides. The uncontradicted testimony is that the hides were worth from five to six dollars each. The testimony that the tire marks in the field and those made by the defendant's truck were identical was given by several witnesses.

The defendant himself did not testify. He sought to prove an alibi by the testimony of his two cousins and the wife of one of them. But their testimony as to the defendant's whereabouts leaves unaccounted for a period of time during which the defendant could have committed the crime. The distance between the place where the hides were taken from the animals and the place where those witnesses testified the defendant was seen by them was short, and an automobile could cover the distance in a few minutes.

One of the cousins testified that he saw "this bunch of horses" alive on Wednesday, the 8th, after the defendant had left for Oklahoma; and that the next day he saw them dead; that they had been shot. Another cousin testified that on the morning of Monday, the 6th, he saw seven of the horses dead; that they had been killed and skinned. Another witness testified that about 4 o'clock in the afternoon of Monday, the 6th, he saw six carcasses in the field; that none was skinned; that he saw a man there who "looked like he was preparing to skin a horse." Still another witness for the defense testified that he was in the field on Wednesday, the 8th, that there were no dead horses there at that time; that on Friday, the 10th, he was at the same place and saw some carcasses there. And still another of the defendant's witnesses testified that on Monday, the 6th, at about 1:30 p. m., there were no carcasses there, but that in the morning of Tuesday, the 7th, he saw three carcasses there. The defendant's two cousins and another witness testified that they saw the defendant's truck on Wednesday, the 8th, and that there were no hides in the truck, nor did they see a crowbar or a chain or a wagon sheet. Three witnesses testified to the good reputation of the defendant. Such is the evidence with reference to the defendant's connection with the crime.

In their brief, counsel for the defendant challenge: (1) The sufficiency of the pleading; (2) the court's ruling denying their motion to require the people to elect between the fifth count and the seventh count; (3) the court's rulings on the admission of evidence; and (4) the sufficiency of the evidence.

1. It is said that the fifth count is duplicitous; that it charges five separate and distinct larcenies.

No more than one offense should be charged in one count; but, by the great weight of authority, the stealing of several articles of property at the same time and place, as one continuous act or transaction, may be prosecuted as a single offense, although the several articles belong

to several different owners. See note, 42 L. R. A. (N. S.) 967, 968; 17 R. C. L., p. 54. This is a humane rule. If each article stolen were of a value sufficient to make the crime a felony, and a separate charge could be filed as to each, a defendant, if convicted, might be sentenced to the penitentiary for the rest of his life.

The fifth count alleges that on a day specified the defendant, within the county of Baca, state of Colorado, did "then and there" steal one horse hide of the property of Ray Martin, two horse hides of the property of S. L. Thompson, two horse hides of the property of John Turner, three horse hides of the property of some person or persons unknown, and one mule hide of the property of some person or persons unknown; said hides being of the · value of $36. It is said that where articles are alleged to have been stolen from different persons, it cannot be assumed that they were all stolen at the same time and place; that the information does not allege that they were stolen at the same time and place, and therefore is bad on demurrer. There are authorities that sustain the contention. At least two of them (*State v. Bliss,* 27 Wash. 463, 68 Pac. 87, and *Joslyn v. State,* 128 Ind. 160, 27 N. E. 492, 25 Am. St. Rep. 425) have been overruled. See *State v. Laws,* 61 Wash. 533, 112 Pac. 488; *State v. Makovsky,* 67 Wash. 7, 120 Pac. 513; *Furnace v. State,* 153 Ind. 93, 54 N. E. 441. In *Richey v. State,* 28 Wyo. 117, 205 Pac. 304, allegations substantially the same as those before us were held to charge that all the cattle were taken at the same time and place, and therefore to charge but one larceny. To the same effect, see also *State v. Klasner,* 19 N. M. 474, 145 Pac. 679, Ann. Cas. 1917 D, 824; *State v. Clark,* 46 Ore. 140, 80 Pac. 101; *People v. Johnson,* 81 Mich. 573, 45 N. W. 1119; *State v. Newton,* 42 Vt. 537. Other cases could be added to the list, but these will suffice.

There was a time when, in criminal cases, the decisions were such as tended to encourage subtleties and hypertechnical refinements; but, in view of two provisions of

our statutes, such is no longer the case. Section 7062, C. L., provides that: "Every indictment \* \* \* shall be deemed sufficiently technical and correct which states the offense \* \* \* so plainly that the nature of the offense may be easily understood by the jury." Informations are governed by the same section. Section 7103, C. L., declares that, " \* \* \* no indictment or information shall be deemed insufficient, nor shall the trial, judgment or other proceedings thereon be reversed or affected by any defect which does not tend to prejudice the substantial rights of the defendant on the merits." In our decisions, we have given effect to the statutory command. See *Koontz v. People,* 82 Colo. 589, 263 Pac. 19, and cases there cited. The Supreme Court of the United States has given effect to similar provisions. That court has held that in view of similar provisions in the Philippine Criminal Code, of Procedure, a criminal complaint that charged the falsification of a public and official document by the defendant, a disbursing officer of a certain bureau "of the United States Government of the Philippine Islands," with intent to defraud "the United States Government of the Philippine Islands," was good 'on demurrer, although there is no such body politic. The court said that, " \* \* \* whatever technical nicety of discrimination might have been insisted on at one time, cannot now be, in view of the provisions of the Philippine Criminal Code of Procedure." *Weems v. United States,* 217 U. S. 349, 361, 30 Sup. Ct. 544 (19 Ann. Cas. 705).

The objection that the fifth count is duplicitous cannot be sustained. In overruling the demurrer to that count, the court did not err.

If the evidence shows that there were several distinct larcenies, though charged as one, a motion to quash is proper. *Trask v. People,* 35 Colo. 83, 83 Pac. 1010. But no such motion was made after the people's. evidence was in. Besides, the evidence sufficiently shows one larceny only, though two, or perhaps three, of the hides were owned by different persons.

2. The defendant assigns as error the court's refusal to require the people to elect ''as to whether they relied upon the fifth or seventh count of the information.'' We have searched the record to find such a motion, but find none. The motion that was made was, not to elect as between the fifth count and the seventh count, but to elect, as to each count, ''as to whether they rely upon the offense of killing the animal  *  *  * , or whether they rely upon the offense of stealing, riding and driving away said animal.'' The motion may have had some application to other counts; it certainly did not have any application to those now before the court.

3. Witnesses Davis and Dodge were permitted to testify, over the defendant's objection, that they never had given the defendant permission to take the hides from carcasses of any horses carrying their brands. A witness had testified that at the place where the skinned carcasses were, the defendant told .him that he did not know to whom the horses belonged, but he was getting the hides, and that, upon being asked what hides he was claiming, the defendant answered, ''Dan Davis's hides and the Dodge hides.'' In view of that testimony, it was permissible to show that Davis and Dodge had not given the defendant permission to take the hides. *Mora v. People*, 19 Colo. 255, 35 Pac. 179.

4. That the defendant took the hides is conclusively established by the evidence; the evidence for the defense is not sufficient to raise a reasonable doubt about that. But the defendant says that there is no proof of ownership, and no proof that the hides were taken without the consent of the owner.

(a) As to ownership. Where, as here, the hide is removed from an animal and disposed of, it may be impossible to identify the carcass as that of an animal owned by a certain person, for the identifying brand is on the hide. Hence the practice of alleging ownership in an unknown person. The fact that the ownership was unknown at the time of filing the information need not

be proven by direct evidence; circumstantial evidence is sufficient for that purpose as well as for other purposes. The defendant stated to a witness that he did not know to whom the horses belonged. The deputy sheriff who conducted the investigation did not know. S. L. Thompson was able to identify one of the carcasses, and only one, as that of a horse belonging to him. The brand inspector discovered faint traces of John Turner's brand on the flesh of one carcass, but did not know who owned the others. Ray Martin identified, as that of a horse belonging to him, one carcass, and one only; the identification was by means of a bobbed tail found near the carcass, and a "painted" colt removed from the carcass. The circumstances disclosed by the evidence show that the hides were not the property of the defendant; indeed, his defense was an alibi, and that he did not have the hides at all. The defendant's counsel contend that the ownership of only two of the nine animals was proven. There were, then, six or seven animals whose owners were unknown, as shown by all the circumstances in evidence. The undisputed evidence is that the hides were worth five to six dollars each, making a total value of at least thirty dollars, sufficient to sustain the conviction of the defendant on the seventh count. As the sentences under the fifth and seventh counts were made to run concurrently, we need not discuss separately and at length the question of ownership presented by the fifth count. *Quinn v. People,* 32 Colo. 135, 75 Pac. 396; *Imboden v. People,* 40 Colo. 142, 90 Pac. 608; *White v. People,* 79 Colo. 261, 245 Pac. 349. We will say, however, that on this question the evidence is sufficient to support the conviction on that count also.

(b) As to want of consent. That need not be proven by direct evidence; it may be inferred from the circumstances attending the commission of the crime. The circumstances in evidence indicate that the hides were taken without the consent of the owner, whoever he is. Would

488

it not be demanding rather too much of the people to require the production of an *unknown* person, and his testimony that he did not consent?

Finding no reversible error in the record, we affirm the judgment.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE MOORE, and MR. JUSTICE BURKE concur.