The STATE of Utah, Plaintiff and Appellant,

v.

Walter Darwin BARKER, Defendant and Respondent.

No. 16676.

Supreme Court of Utah.

Jan. 28, 1981.

Theodore L. Cannon, County Atty., Susan Creager, Deputy County Atty., Robert B. Hansen, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellant.

Robert M. McRae and Loni F. DeLand of McRae & DeLand, Salt Lake City, for defendant and respondent.

MAUGHAN, Chief Justice:

The State appeals the District Court's order granting the defendant's motion to quash the information filed against him. We affirm. All statutory references are to Utah Code Annotated, 1953, as amended.

The defendant, Walter Darwin Barker, was initially charged with criminal mischief in violation of 76–6–106.[1] In support of this charge the State alleged that on the evening of March 8, 1979, the defendant broke or damaged the windshields of 16 separately owned vehicles. The State further contends the several acts of vandalism occurred within a short period of time and at one location, to-wit: the parking lot of P. J.'s Lounge in Salt Lake City, Utah.

Although the damage to any single vehicle did not exceed $250, the total damage to all the vehicles was approximately $1800.00. Relying on this latter amount the State charged the defendant with a third-degree felony as provided for in 76–6–106(2)(c).[2]

Pursuant to 77–23–3(e) and (g) the defendant moved to quash the information on the grounds the facts presented in the State's bill of particulars did not constitute the offense charged, but rather represented 16 separate misdemeanor offenses involving 16 separate victims. The defendant further argued this series of misdemeanor offenses could not be aggregated to support the third-degree felony charge. Following a hearing on the matter, the District Court granted the defendant's motion and dismissed the charge.

■ The sole issue before this Court is whether the State may, for the purpose of charging a defendant with a felony under 76–6–106 aggregate the damages suffered by individual property owners from separate acts of vandalism occurring at the same general location over a short period of time.

In support of its aggregation of the damage amount, the State relies on an analogy to the single larceny doctrine. This common law doctrine which is rooted in antiquity rests upon a specific analytical foundation. That foundation provides a single larcenous taking of property, whether owned by one or several individuals, will be treated as a single criminal offense.[3] This conclusion is based on the premise that if the taking (in the older cases referred to as the caption) constitutes but a single act, then there is but one offense and the multiple ownership of the property taken is immaterial.[4]

Implicit in this analytical foundation is the opposite conclusion, i. e., that several distinct acts of larceny constitute separate criminal offenses.[5] This concept is explained in Wharton's Criminal Law and Procedure,[6] which states:

"If different articles are taken from different owners at different times, the de-

1. 76–6–106 reads, in pertinent part: "(1) A person commits criminal mischief if: ... (c) He intentionally damages, defaces, or destroys the property of another...."

2. 76–6–106(2)(c) states: "Any other violation of this section is a felony of the third degree if the actor's conduct causes or is intended to cause pecuniary loss in excess of $1,000 value; a class A misdemeanor if the actor's conduct causes or is intended to cause pecuniary loss in excess of $500; a class B misdemeanor if the actor's conduct causes or is intended to cause pecuniary loss in excess of $250; and a class C misdemeanor if the actor's conduct causes or is intended to cause loss of less than $250."

3. See *People v. Sichofsky*, 58 Cal.App. 257, 208 P. 340 (1922). See generally 37 A.L.R.3d 1407–1416.

4. This rationale is followed in the first Utah case which expressly employs the single larceny doctrine, i. e., *State v. Mickel*, 23 Utah 507, 65 P. 484 (1901). In that case, this court explained: "Where many articles are stolen at one time, there is only one theft, whether the ownership is in one or many." Id. at 485.

5. See *State v. Warren*, 77 Md. 121, 26 A. 500 (1893).

6. 2 Anderson, Wharton's Criminal Law and Procedure, § 451 (1957).

fendant is guilty of separate larcenies. Accordingly, if on the same expedition there are several distinct larcenous takings, as taking the goods of one person at one place, and afterwards taking the goods of another person in another place, and so on, as many crimes are committed as there are several and distinct takings, and this is true although the thefts may all have been committed in rapid succession and in pursuance of a formed desiring to steal."

Following this "single act-several act" dichotomy, the Colorado Supreme Court held the robbery of three stagecoach passengers, although committed at the same place and in rapid succession, constituted three distinct offenses.[7] Similarly, where articles belonging to different owners were stolen from several areas of a wagon yard, each taking was considered a separate offense.[8] The same conclusion was reached in *State v. Bolen*[9] where the court held the theft of money from two cash registers which, although belonging to separate retail shops, were located in a single room and divided by a low wall represented two separate criminal offenses. The court explained:

"The facts show a taking from each cash register. The registers were in different locations; the money taken was the property of separate owners. The factual predicate for the doctrine (single larceny) is lacking because taking the money from two cash registers did not occur at the same time and place."[10]

Under the facts of the present case, the defendant moved from automobile to automobile smashing windshields. Each automobile was owned by separate individuals whose property was damaged by separate acts of the defendant. Although the several acts occurred at the same place and in rapid succession, the factual prerequisite for the application of the single larceny doctrine, i. e., a single act, is absent.

Therefore, each separate act of destruction constitutes a violation of 76–6–106(1)(c). Since none of the individual acts resulted in damage to the property of another in excess of $250, the defendant could not be tried for a felony under 76–6–106(2)(c).

This result is also supported by the underlying purpose and policy of the single larceny doctrine. The purpose of that doctrine is to prevent the aggregation of criminal penalties for a single act[11] and stems from the presupposition of our law to resolve doubts in the enforcement of the penal code against the imposition of a harsher punishment.[12]

The other contentions advanced by the State are equally without merit and the District Court's decision should be upheld

---

7. *In Re Allison*, 13 Colo. 525, 22 P. 820 (1889).

8. *State v. Maggard*, 160 Mo. 469, 61 S.W. 184 (1901). In *Maggard*, the Supreme Court of Missouri explained: "But, where property belongs to different persons, and is located in different places, as in the case at bar, each asportation with intent to steal constitutes a different offense, although the thefts may all have been committed in rapid succession, and in pursuance of a formal design to steal. In this case it was impossible, in consequence of the different location of the property, that it could have all been taken at the same time, ..." Id. at 184–185.

9. *State v. Bolen*, 88 N.M. 647, 545 P.2d 1025 (1976); see also, *People v. Sichofsky*, supra, note 3, at 342. ("Where articles stolen from different owners are located at different places, as, for example, where they are located in different rooms of the same house, each asportation with intent to steal constitutes a different offense, although the thefts may all have been committed in rapid succession and in pursuance of a formed design to steal.")

10. *State v. Bolen*, supra, note 9, at 1026.

11. See *Sweek v. People*, 85 Colo. 479, 277 P. 1 (1929). In *Sweek*, the Colorado Supreme Court explained: "This is a humane rule .... If each article stolen were of a value sufficient to make the crime a felony, and a separate charge could be filed as to each, a defendant, if convicted, might be sentenced to the penitentiary for the rest of his life." Id. at 3.

12. See *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955).

and the order granting the defendant's Motion to Quash affirmed.

STEWART and WILKINS,* JJ., concur.

HALL, Justice (dissenting):

The main opinion treats the crime of criminal mischief[1] as a crime against the *person* when in fact it is a crime against *property* and the *public.*

The common-law crime of malicious mischief[2] had, as one of its elements, the specific intent of malice toward the owner of the damaged property. However, the Utah Legislature has seen fit to delete that element and to extend the common-law offense to cover acts of indiscriminate public vandalism.[3] Consequently, the essential elements of the offense consist only of (1) the intentional damaging of (2) the property of another. It matters not whether the actor damages the property of one or many, so long as the property is "of another," and is damaged in a single, continuous act.[4]

In the instant case, notwithstanding the fact that the State has no burden of proof as to specific intent of malice toward the property owners, the defendant is not precluded from presenting evidence of such intent, and he may proceed to do so if he deems it to be in his best interest. However, as yet, no such evidence has been presented. The mere fact that the 16 vehicles involved are in separate ownership, standing alone, certainly does not resolve the matter of defendant's intent.

There is no dispute that the property damaged was "of another" and it is readily apparent that the act of the defendant in breaking the 16 windshields was of continuous duration punctuated only by the insignificant lengths of time necessary to move from one vehicle to another. Therefore, the *ipse dixit* of the main opinion is unacceptable that the defendant did not commit a *single* act of public vandalism.

When viewed in the light of the foregoing, the "single larceny" doctrine has application, by analogy, to the crime of malicious mischief. The wrongful deprivation of private property (by whatever means) is involved in both offenses, and the same public wrong is perpetrated.

A majority of U.S. jurisdictions (including Utah[5]) have long embraced the view that "the stealing of property from different owners at the same time and at the same place constitutes but one larceny."[6] This single larceny doctrine is based on the theory that the felonious taking of property constitutes an offense against the public generally, whether one or several rightful owners be involved. As a result, a taking which occurs at a single time and place constitutes a single offense.[7]

Jurisdictions have not been uniformly rigid on what constitutes "the same time" or "the same place." Some have opted for a strict construction of the rule, holding that, where items are taken consecutively (albeit rapidly) rather than at once,[8] or where the items are taken from separate locations in the same vicinity,[9] the doctrine is not appli-

---

* WILKINS, Justice, concurred in the opinion before his resignation.

1. U.C.A., 1953, 76–6–106.

2. Formerly provided for by U.C.A., 1953, 76–60–5, but now superceded by "criminal mischief" provisions of U.C.A., 1953, 76–6–106, *supra.*

3. In construing a similar Colorado statute, the court in *People v. Cisneros,* 193 Colo. 380, 566 P.2d 703 (1977), reached the same conclusion.

4. U.C.A., 1953, 76–1–401 defines a "single criminal episode" as all conduct which is closely related in time and is incident to an accomplishment of a single criminal objective.

5. *State v. McKee,* 17 Utah 370, 53 P. 733 (1898); *State v. Mickel,* 23 Utah 507, 65 P. 484 (1901).

6. 2 Wharton's Criminal Law and Procedure, § 451.

7. 50 Am.Jur.2d, Larceny, § 3.

8. *State v. Maggard,* 160 Mo. 469, 61 S.W. 184 (1901).

9. *State v. Norman,* 135 Iowa 483, 113 N.W. 340 (1907).

cable. Were the taking of private property, rather than its destruction, involved in the present case, however, we would be obliged by the underlying policy of the single larceny doctrine to hold that a single offense, rather than a series of related offenses, was committed. To hold otherwise would subvert the doctrine's purpose by resort to a largely irrelevant technicality.

Defendant argues that, where the Legislature has intended the aggregation of value of the property involved in several offenses, it has specifically provided therefor. The cited examples are those dealing with the issuance of bad checks [10] and with the fraudulent use of credit cards.[11] In both of these cases, it was necessary for the Legislature to specify that aggregation of value is permissible, as the common law would not otherwise have provided therefor. The cited provisions permit aggregating the value of property if taken over an extended period of time (up to six months). Absent the specific language of the statute, the issuance of each bad check, or each fraudulent use of a credit card, would constitute a separate and distinct criminal offense. No such difficulty exists in the present case, where all the property involved was allegedly damaged during the course of a single criminal act.

Defendant likewise resorts to Utah's "single criminal episode" provision [12] for the proposition that the offense involved must be regarded as a series of separate acts. The cited provision states that, where a defendant commits several criminal violations in the course of a single episode, he may be charged with all of them. It also imposes limitations on the holding of separate trials for each criminal offense involved in a single episode, and sets out guidelines regarding the giving of instructions on lesser-included offenses. At no point does the cited provision preclude the aggregation of value for the purpose of bringing a single criminal charge, nor does it impose upon the State the requirement of segmenting a defendant's actions for the purpose of reducing the magnitude of the offense.

It must also be observed that no apparent policy objective would be served by imposing the interpretation of the trial court and the defendant upon the legislative provision in question. To the contrary, it seems little more than a technical escape-hatch, which would permit a criminal defendant to engage in the wholesale destruction of private property, and then evade the statutory punishment assigned simply on the basis that multiple owners were involved. Such an interpretation is clearly in derogation of the intended purpose of the Legislature.

The majority of the Court opines that its ruling is supported by the underlying purpose and policy of the single larceny doctrine, i. e., the prevention of the aggregation of criminal penalties for a single act. However, my reading of the single criminal episode statute [13] would indicate that just the opposite is true, since the State will now be free to file a complaint setting forth 16 separate misdemeanor counts against the defendant, each punishable by imprisonment up to 90 days and by a fine up to $299.

I would reverse and remand for a trial on the merits.

CROCKETT, J., concurred in the dissenting opinion of HALL, J., before his retirement January 5, 1981.

---

10. U.C.A., 1953, 76–6–505.

11. U.C.A., 1953, 76–6–506.1.

12. U.C.A., 1953, 76–1–401, et seq.

13. U.C.A., 1953, 76–1–402(1).