[Crim. No. 2982. In Bank.—June 10, 1927.]

## In the Matter of ALBERT SICHOFSKY on Habeas Corpus.

[1] CRIMINAL LAW—PENAL CODE—APPLICABLE TO CALIFORNIA ONLY.— The provisions of the Penal Code of this state must be held, except as otherwise expressly therein provided, to have application to those offenses which are punishable as crimes in California, and cannot be held to apply to acts which are not crimes under its laws, though these may be punishable as crimes under the laws of other jurisdictions.

[2] ID.—CONCURRENT AND CONSECUTIVE SENTENCES — SECTIONS 105, 669, PENAL CODE.—Sections 105 and 669 of the Penal Code, and all other sections therein which have reference to concurrent and consecutive sentences, have in contemplation only those crimes and their punishments which are cognizable under the laws of the state of California.

[3] ID.—SENTENCE — TIME OF COMMENCEMENT—SECTION 670, PENAL CODE.—A term of imprisonment in the state prison does not commence to run, under the terms of section 670 of the Penal Code, until the actual delivery of the prisoner there.

[4] ID. — CONVICTION OF FEDERAL OFFENSE — CONVICTION OF STATE OFFENSE—RUNNING OF SENTENCES.—Where a defendant, after conviction in the federal court for an offense under the federal statutes, was taken, under order of the federal court, by the United States marshal to a state court in which he was tried, convicted, and sentenced for an offense against the state laws, and thereafter the marshal, in whose custody he had remained all the time, returned the prisoner to the federal court for execution of its sentence, upon the expiration of which he was confined in the state prison under the sentence of the state court, the defendant is not entitled to his discharge on *habeas corpus* before the expiration of the sentence of the state court, on the theory that the state sentence ran concurrently with the sentence of the federal court.

[5] ID.—INDETERMINATE SENTENCE LAW—FIXING SENTENCE—DUTY OF PRISON DIRECTORS—PRESUMPTIONS.—Under the so-called "Indeterminate Sentence Law" (Penal Code, section 1168), it is the duty of the board of state prison directors, after the expiration of the minimum term of imprisonment to determine the length of sentence within the maximum limit; and if it be conceded that

3. See 8 **Cal. Jur.** 656.

4. Concurrent sentences by different courts, note, 26 **A. L. R.** 399.

5. See 8 **Cal. Jur.** 469.

a sentence by a federal court should run concurrently with one by a state court, it will be assumed that the board of state prison directors, in fixing the state term, took into account the federal sentence.

(1) 16 C. J., p. 1371, n. 47.	(2) 16 C. J., p. 1371, n. 47.	(3) 16 C. J., p. 1372, n. 49.	(4) 16 C. J., p. 1374, n. 96.	(5) 22 C. J., p. 137, n. 72 New.

APPLICATION for a Writ of Habeas Corpus to discharge a prisoner from the custody of the Warden of the State Prison. Writ discharged and prisoner remanded.

The facts are stated in the opinion of the court.

J. H. Sapiro and E. V. McKenzie for Petitioner.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

RICHARDS, J.—The petitioner herein applied for a writ of *habeas corpus,* alleging that he was unlawfully imprisoned, confined, and restrained of his liberty by the warden of Folsom state prison. The facts out of which such alleged illegal confinement and detention arose are the following: In the early part of the year 1921 the petitioner was indicted by a federal grand jury in and for the southern district of California upon the charge of having unlawfully entered the United States from Mexico without a passport, which offense was made a crime under the federal laws and regulations then in force. He pleaded guilty to such charge before the federal court having jurisdiction of said offense and was, on March 22, 1921, by said court, sentenced to a term of three years' imprisonment in the federal penitentiary at McNeil's Island, Washington. Shortly thereafter and while the petitioner was in the custody of the United States marshal under commitment upon such sentence, the district attorney of Los Angeles County, California, represented to the aforesaid federal court that said petitioner was under indictment issued out of the superior court of the state of California in and for the county of Los Angeles upon charges of grand larceny and embezzlement and requested his presence in said court for the purpose of proceedings upon said indictment.

Thereupon the federal court made an order staying the execution of its said sentence for the period of fifteen days and directing that "The United States marshal take the above named defendant to the Hall of Justice, to the court room thereof, in the city of Los Angeles, county of Los Angeles, state of California, at such times as his presence in the proceedings there pending against him under said indictment in the superior court of the state of California in and for the county of Los Angeles, shall be required"; and further directing that the marshal "keep the said defendant in his custody for the purposes herein stated." The petitioner was thereupon taken to said superior court, where he was put upon trial before a jury under said indictment for the crimes set forth therein and was upon his said trial found guilty upon two separate counts of grand larceny, and was on or about April 21, 1921, sentenced by said court to be punished by imprisonment in the state prison for the term prescribed by law for each of said crimes. Upon said judgment and sentence a commitment was issued by said court to the sheriff of said county in due form. The petitioner, however, was not delivered into the custody of said sheriff pursuant to said commitment for the reason that his custody had remained with the United States marshal, who, after his aforesaid conviction and sentence in the state court, returned the petitioner to the federal court for the execution of the sentence therein imposed upon him, whereupon the petitioner made application for a writ of *habeas corpus* to said federal court urging that he was entitled to release upon several grounds, among which was his contention that the federal court and its officials had lost jurisdiction over the petitioner by virtue of its order permitting the petitioner, while in custody of the United States marshal, to be put upon trial in the state court for the crime of grand larceny. The federal court refused to sustain said contention, holding that it had at all of said times retained jurisdiction over the petitioner; and it thereupon discharged said writ and remanded the petitioner to the custody of the United States marshal to abide the judgment of the court for the remainder of his term in the federal penitentiary. The petitioner was thereupon taken to McNeil's Island, Washington, where he was confined under his said sentence imposed by said court, and from which prison he was discharged on August 9, 1923,

having served his said term. Thereupon and immediately upon his discharge he was re-arrested by the officials of the federal government upon the charge of being unlawfully within the United States and subject to deportation. While out on bail upon this latter charge the petitioner was taken into custody for the first time by the sheriff of the county of Los Angeles, acting under the commitment which had been issued to him by the superior court and was immediately thereafter taken and transferred to the state prison at San Quentin, California, where he was received by the warden of said prison on or about November 16, 1923. Shortly thereafter he was regularly removed to the state prison at Folsom, California, where he is still imprisoned and confined. Subsequent to the date of his confinement in said state prison the state board of prison directors, having the authority so to do, fixed the period of his confinement in said prison under his convictions of grand larceny in said superior court at the terms of five and two years, respectively, said terms to run consecutively. The petitioner is still confined under said order of said board and it is from such confinement that he seeks release by this writ. The petitioner did not assert in the superior court, nor does he contend here, that the superior court did not have jurisdiction to try, condemn, and sentence him for the crimes for which he was tried therein; nor does he here assert that his conviction and sentence therein were not in all respects regular. He did, however, upon his appeal to the appellate court from said judgment contend that the superior court did not have jurisdiction of his person for the reason that the United States marshal had at all times the custody of the defendant's person during his trial in said court. The appellate court ruled against this contention (*People* v. *Sichofsky*, 58 Cal. App. 257, 261 [208 Pac. 340]); and this court denied a petition for rehearing based upon that ground. The petitioner bases his contention that he is entitled to his release upon his interpretation of the Penal Code of California relating to the limit of imprisonment for one who has been convicted of two or more separate crimes. He directs our attention first to the language of section 669 of the Penal Code, which reads as follows:

"When any person is convicted of two or more crimes before sentence has been pronounced upon him for either, the imprisonment to which he is sentenced upon the second or

other subsequent conviction must commence at the termination of the first term of imprisonment to which he shall be adjudged, or at the termination of the second or other subsequent term of imprisonment, as the case may be.''

The petitioner does not contend that he comes within the terms of this section of the Penal Code, but his insistence is that said section, and also section 105 thereof, constitute a limitation upon the power of the courts of California to impose consecutive sentences otherwise than as therein provided; and argues that in all other cases than those referred to in said sections the sentences of persons convicted of two or more crimes must run concurrently, and he therefore urges that during the time of his confinement in the federal prison for the crime which he commited against the federal laws he was also serving that portion of his sentence under the state laws which would be embraced within the former term. There are several difficulties in the way of upholding this contention. [1] The provisions of the Penal Code of the state of California must be held, except as otherwise expressly therein provided, to have reference and application to those offenses which are recognizable and punishable as crimes or misdemeanors against the peace and dignity of the state of California, and cannot be held to contemplate in the fixation or duration of their punishments acts or offenses which are not crimes under its laws, though these may be designated and punished as crimes under the laws of other jurisdictions. To hold otherwise would lead to certain absurd conclusions; such as that a criminal who had been tried and sentenced for some serious crime against some other jurisdiction, but who had escaped and come into the jurisdiction of California and while here had committed a crime against its laws, would be practically immune from punishment for such latter crime; for if captured and committed to prison in the jurisdiction of his first offense he would be also serving sentence for his subsequent California crime; and in such event this state would be powerless to try, convict, or punish such an offender against its laws. An equally absurd situation would arise in a case where a criminal who had been tried and convicted for an offense against our state laws, but who had escaped before his actual incarceration in our state prison and while thus a fugitive from justice had committed a crime against the laws of another jurisdiction and

had been there arrested, indicted, convicted, and sentenced to prison in that jurisdiction, would be also serving time there for the crime for which he was convicted and sentenced here, but for which, by reason of his escape, his actual commitment in the state prison had been rendered for the time being impossible. [2] In our opinion, therefore, sections 669 and 105 of the Penal Code and all other sections therein which have reference to concurrent and consecutive sentences have in contemplation only those crimes and their punishments which are cognizable under the laws of California. This court has already decided that the consequences above referred to do not follow, in the case of *In re Tanner*, 178 Cal. 792 [175 Pac. 81], which presents practically an identical situation, and wherein it was held that during the time such a prisoner was serving in an Ohio state prison he was not being imprisoned in execution of a California judgment and could not be credited with any portion of such time. The petitioner refers to certain other cases decided by this court as seeming to uphold his contention in the foregoing regard. One of these is *Ex parte Cohen*, 198 Cal. 221 [244 Pac. 359]. An examination of this case shows that the petitioner is not entitled to derive any comfort from it, since this court did not therein hold that section 669 of the Penal Code could be said to have application to cases where one judgment had been rendered by a state court and the other by a federal court, but, on the contrary, expressly refrained from deciding that question, holding that the writ sought in that case must be discharged for other reasons. Neither can the petitioner derive any comfort from the case of *Ex parte McGuire*, 135 Cal. 339 [87 Am. St. Rep. 105, 67 Pac. 327], since in that case both convictions were had in the California courts. In that case, however, this court did make certain rulings pertinent to another phase of this proceeding to come presently under discussion. It is true that in that case and also in the case of *Ex parte Casey*, 160 Cal. 357 [116 Pac. 1104], and in certain other cases cited by the petitioner, this court has held that in cases where both trials and convictions have occurred in our state courts the sentences should run concurrently except in the instances provided for under sections 669 and 105 of the Penal Code; but this principle has, as we have already shown, no application to cases of conviction of separate crimes under separate jurisdictions; nor do we find

that the cases cited by the petitioner from other jurisdictions can have any applicability to the instant case for a like reason, with the single exception of the case of *Ex parte Lawson*, 98 Tex. Cr. 544 [266 S. W. 1101], upon which the petitioner confidently relies as dealing with an identical situation. The distinction between that case and the instant case consists in the fact that under the Texas criminal statutes the term of a convicted felon commenced from the time of his sentence (art. 882, Tex. Code Civ. Proc.); while under section 670 of our Penal Code "the term of imprisonment fixed by the judgment in a criminal action commences to run only upon the actual delivery of the defendant at the place of imprisonment." The Texas statutes and cases are, however, in accord with those of California in one respect germane to the instant case, and that is in the view that the officers of each state charged with the execution of criminal judgments have no right or power to suspend by either their affirmative or negligent action the operation of commitments placed in their hands. This brings us to a reconsideration of the case of *Ex parte McGuire, supra,* and of the language and action of this court therein. In that case the defendant had been convicted of a misdemeanor in the police court of San Francisco and sentenced to imprisonment in the county jail for a term of six months. After his term there had commenced he was arraigned in the superior court upon a charge of burglary to which he pleaded guilty; whereupon he was sentenced to be imprisoned in the state prison at Folsom for a term of years. He took no appeal from this latter judgment and no stay of proceedings was ordered or requested. A commitment thereon was accordingly issued and delivered to the sheriff of said city and county of San Francisco, who, however, acting upon the theory that the term of the prisoner in the county jail must first be served returned him thereto and detained him therein in his character as *ex-officio* jailer of said city and county. The prisoner thereupon applied to this court for a writ of *habeas corpus* seeking his release from such custody. Upon hearing, this court decided that the custody of the applicant under his county jail sentence was unlawful for the reason that it was the duty of the sheriff upon receiving the commitment from the superior court to forthwith execute the same by taking and delivering the prisoner to the warden of the state prison;

and while in so holding it also held that the two sentences ran concurrently. [3] The court also expressly held that the term of the applicant's imprisonment in the state prison did not commence to run, under the terms of section 670 of the Penal Code, until the date of his actual delivery there. It is impossible to distinguish between that case and the case at bar in so far as the application of the provisions of section 670 of the Penal Code is concerned and if there be any distinction it must operate in favor of the even more exact and complete application of said section of the Penal Code to the facts of the instant case for the very cogent reason that in the case at bar the sheriff of the county of Los Angeles had no power to execute the commitment which had been delivered to him by the clerk of the superior court until after the petitioner had fully served his term in the federal penitentiary and been released by the federal authorities upon a date just prior to his incarceration in the state prison at San Quentin. In the foregoing regard there exists a strong analogy between the situation of the sheriff in the instant case and the situation he would have been in had the petitioner herein escaped from custody after his conviction in the state court and prior to his incarceration in the state prison. [4] It seems clear to us that in either event section 670 of the Penal Code should be given full application, and hence that in this case the term of imprisonment of the petitioner herein in the state prison of this state did not commence to run until November 16, 1923, the date of his actual delivery to and incarceration therein. In the case of *In re Fritz,* 179 Cal. 416 [177 Pac. 157], it was held that the fact that a convicted person had been subjected to confinement under a prior judgment which was void did not furnish a reason why the later imposition of a valid judgment fixing a new term of imprisonment should not as to its operation commence to run upon the actual delivery of the defendant at the place of imprisonment under the express terms of section 670 of the Penal Code.

[5] We are thus brought to another consideration which would seem to fully and finally dispose of the petitioner's contention that he is entitled to a discharge from the custody of the respondent warden. The petitioner upon his conviction in the superior court was sentenced under the indeterminate sentence law of California for the period pre-

scribed by law. Section 489 of the Penal Code provides that "Grand larceny is punishable by imprisonment in the state prison for not less than one nor more than ten years." The so-called "indeterminate sentence law," Penal Code, section 1168, provides that in such a case "the governing authority of the reformatory or prison in which such person may be confined . . . shall determine after the expiration of the minimum term of imprisonment has expired, what length of time, if any, such person shall be confined"; and further provides that "any convicted person undergoing sentence in either of the state prisons of this state, not sooner released under the provisions of this act shall, in accordance with the provisions of existing law, be discharged from custody on serving the maximum punishment provided by law for the offense of which such person was convicted." Upon the actual delivery of the petitioner herein to the state prison on November 16, 1923, and at a time thereafter when his minimum term had expired under the provisions of section 489 of the Penal Code, the board of prison directors who, under the said indeterminate sentence law, were charged with that duty, at a meeting of said board held on December 12, 1924, as the return to this writ shows, "determined the length of confinement that the said Albert Sichofsky should serve" at five years for the crime of grand larceny of which he had been convicted under the first count in his indictment in the superior court, and two years for the separate crime of grand larceny of which he had been convicted under the second count of said indictment, said terms "to run consecutively." It further appears from said return that allowing the petitioner all possible credits for good conduct during such terms he would be entitled to be discharged from custody on May 17, 1929. If we were to assume upon this proceeding that the petitioner was correct in his interpretation of our Penal Code to the effect that his sentences at the hands of the federal court and of the state court should run concurrently then it would follow necessarily that if such be the law, the state board of prison directors in their aforesaid action upon the petitioner's case so considered it, since it would be their official duty so to do, and we must presume that such official duty was regularly performed. (Code Civ. Proc., sec. 1963, subd. 15.) It follows

that we must assume that the board of prison directors
in fixing the length of time the petitioner "shall be con-
fined" within the limit of the maximum period of ten years
for which he was sentenced under each of his said con-
victions of grand larceny took into account the fact, if it
is assumed to be the fact, that his term of three years'
service in the federal prison was to be credited as against
the maximum term for which he had been sentenced under
the indeterminate sentence law as construed in *Ex parte
Lee,* 177 Cal. 690 [171 Pac. 658], and *In re Fritz,* 179
Cal. 415 [177 Pac. 157], and after deducting the federal
term from the maximum term under each of his said con-
victions, fixed the length of his actual confinement in the
state prison at five and two years respectively "to run
consecutively." Such would seem to be the only reasonable
interpretation to be given to the language of the indeter-
minate sentence law even upon the assumption that the
petitioner's contention as to the concurrent operation of
his imprisonment under the two jurisdictions is correct; and
whether or not this be so it would seem to be the only
reasonable interpretation of the indeterminate sentence law
that it was intended to commit the entire subject of the
length of a convicted prisoner's detention in the state prison
to the discretion of the board of prison directors within
his maximum term as prescribed by the Penal Code. This
would seem to be an irresistible conclusion when the pur-
poses for which the indeterminate sentence law, as ex-
pounded by this court in the Lee case, *supra,* are considered;
and also when the further provisions of section 1168 of the
Penal Code which embodies that law are taken into con-
sideration, wherein it is provided that the said board is to
be furnished by the judge and other officers of the court
wherein the prisoner was convicted with a varied amount of
information regarding his career, habits, occupation, and
character upon the basis of which, as well as upon the
observation of the prison officials during the passage of
his minimum term, the board of prison directors are to
determine how far the maximum term of his imprisonment
is to be mitigated by their fixation of the actual length
of his confinement. From any of the foregoing points of
view, therefore, it would seem to follow necessarily that the

201 Cal.—24

petitioner here is not entitled to release upon his present application.

The writ is discharged and the petitioner remanded.

Waste, C. J., Shenk, J., Curtis, J., and Langdon, J., concurred.

PRESTON, J., Dissenting.—I find myself unable to concur in so much of the opinion of Mr. Justice Richards as denies to the petitioner credit upon the state term of imprisonment for the period of time spent by him in the federal penitentiary. The opinion seems to me to have for its foundation a misunderstanding of the relationship between the United States and the state of California with reference to the prisoner. The universal principle of law applicable is as follows: "Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted; and this rule applies alike in both civil and criminal cases. (*Hagan* v. *Lucas*, 10 Pet. 400 [9 L. Ed. 470]; *Taylor* v. *Carryl*, 20 How. 584 [15 L. Ed. 1028]; *Troutman's Case*, 24 N. J. L. (4 Zab.) 634; *Ex parte Jenkins & Crosson*, 2 Am. Law Reg. (O. S.) 144 [Fed. Cas. No. 7259].) It is indeed a principle of universal jurisprudence that where jurisdiction has attached to person or thing, it is—unless there is some provision to the contrary—exclusive in effect until it has wrought its function." (*Taylor* v. *Taintor*, 16 Wall. (83 U. S.) 366, 370 [21 L. Ed. 287].)

With this principle in mind, it must be held to be a fact that the United States government had complete control of the person of the defendant and was not forced to surrender said possession until after its own judgment against him had been satisfied. But it must not be overlooked that at the same time it was within the power of the government of the United States to surrender to the state of California for the purpose of its criminal proceedings the person of the defendant. This must be held to have been done when the federal court stayed the proceedings in its own court and ordered that the person of the defendant be taken to the state court for trial. The United States marshal,

from the time jurisdiction of the state court attached, could be none other than an agent of the state of California.

In other words, when the state of California acquired jurisdiction to try, convict, and impose judgment upon the defendant, it had the authority to immediately cause the person of the prisoner to be subjected to the mandates of the judgment.

The question in its last analysis is this: Where the state court has jurisdiction of the person of a defendant and such defendant is tried, convicted, and sentenced in such court, will the judgment so pronounced begin operation at once if the defendant does everything in his power to facilitate the expiation of said sentence without delay or dilatory tactics of any kind or character on his part?

It seems too clear for controversy that the judge of the state court acted with full knowledge of the status of the prisoner and with full knowledge that he was present in his court in the custody of the marshal and had the court desired that the operation of said judgment be suspended, it could and should have used appropriate words to that effect, but this was not done. The commitment issued was for forthwith delivery to the prison. In this connection it must be said that section 670 of the Penal Code, to the effect that sentence of a prisoner does not begin to run until the actual delivery of the defendant at the place of imprisonment, has reference only to cases where the prisoner by his voluntary conduct or consent has prevented the immediate expiation of his sentence and said section 670 has no reference whatever to a case where a defendant himself has acted in co-operation with the authorities of the state to hasten the commencement of service of the sentence imposed.

In this case the sheriff never assumed to take possession nor did the court order possession from the deputy marshal nor did the court order the deputy marshal to deliver said prisoner to the place of imprisonment of the state, but, on the contrary, the United States government was permitted to retain or resume jurisdiction of the person of the defendant, all over the protest and against the will of the prisoner himself. Indeed, the prisoner immediately upon his incarceration in the federal penal institution sought by *habeas corpus* to have himself transferred to the proper place of

imprisonment. (*Ex parte Sichofsky,* 273 Fed. 694). Failing in this, he conducted an appeal from the judgment in the state court and tendered the issue as to whether or not the state had in fact acquired jurisdiction of his person. It was accordingly held by the decision that such jurisdiction had been obtained (*People* v. *Sichofsky,* 58 Cal. App. 257 [208 Pac. 340] [hearing in this court denied]). Thus we say that this court has solemnly declared that the defendant was in the jurisdiction of the state court and, having so declared, the conclusion is inescapable that the superior court had the power to immediately incarcerate the prisoner in the penal institution of the state. Indeed, the judge of said court purported to do this, but by reason of the circumstances above detailed, such incarceration did not take place. Shall this prisoner be charged with dereliction concerning a matter over which he did not have and could not secure any control whatsoever?

"It is familiar practice that wherever the court imposing several sentences desires to have one begin on the expiration of another, that fact is expressly stated in the sentence; and whenever the court inadvertently fails to have the sentence recorded in that form, or from leniency intentionally omits to add such a provision, and the defendant is committed in pursuance of such sentences, he is either voluntarily released by the jailer, or discharged on *habeas corpus* at the expiration of the longest term named in either of the sentences. No presumption will be indulged in favor of sustaining the sentence as cumulative. Accordingly the rule is that where the defendant is already in execution on a former sentence, and the second sentence does not state that the term is to begin at the expiration of the former, the second will run concurrently with the first, in the absence of a statute providing a different rule; but when the different sentences are imposed by different courts it seems that it is not necessary that the sentence should state that the second term is to begin at the expiration of the first." (8 R. C. L., sec. 242, p. 242.)

It will be noted from the above excerpt that it is suggested that if the sentences are from different courts instead of the same courts it might not be necessary for the judgment to recite the fact that the second sentence is to begin to run at the expiration of the first term of service, but this

portion of the text is supported by only one state—the state of Georgia. See *Hightower* v. *Hollis*, 121 Ga. 159 [48 S. E. 969] ; also *Sullivan* v. *Clark*, 156 Ga. 706 [119 S. E. 913]. It is readily demonstrable that these cases are opposed to the great weight of authority upon this subject. Cases directly opposed to such holding follow:

*Zerbst* v. *Lyman*, 255 Fed. 609, 610 [5 A. L. R. 377], where the court said: "It is argued that it was manifest that the California court intended that the punishment should begin after the expiration of the term imposed by the New York court. This nowhere appears. It is true that if the original order of imprisonment in the state penitentiary at San Quentin had not been changed, the imprisonment could not have begun until the prisoner had been released from the Atlanta penitentiary. But there is nothing to indicate that the court intended to do anything other than that which was done.

"It could well be assumed that the court intended, if it can be assumed that it had knowledge of the pendency of another sentence, that the ordinary effect should follow. Ordinarily, two or more sentences run concurrently, in the absence of specific provisions in the judgment to the contrary. *United States* v. *Patterson* (C. C.), 29 Fed. 775; *In re Breton,* 93 Me. 39, 74 Am. St. Rep. 335, 44 Atl. 125] ; 1 Bishop, Crim. Procedure, 1327, 1310. This rule seems to apply where the conviction is had in different courts. *Ex parte Green,* 86 Cal. 427 [25 Pac. 21] ; *Ex parte Black,* 162 N. C. 457 [78 S. E. 273] ; *Ex parte Gafford,* 25 Nev. 101, 83 Am. St. Rep. 568, 57 Pac. 484]. The case cited by appellant of *Hightower* v. *Hollis*, 121 Ga. 160 [48 S. E. 969], if not distinguishable by reason of the nature of the punishment, is apparently in conflict with the weight of authority." See note to the same case in 5 A. L. R. 380; also *Dickerson* v. *Perkins*, 182 Iowa, 871 [5 A. L. R. 374, 166 N. W. 293], where the case of *Hightower* v. *Hollis, supra,* is discussed, and it is said: "The warden therefore acquired no authority under the *mittimus* which did not appear in the judgment. It is contended in argument by the state that the implication of concurrent terms is applicable only when the two or more sentences are imposed by the same court. In support of this argument the case of *Hightower* v. *Hollis*, 121 Ga. 159 [48 S. E. 969], is cited. The case

is not wholly in point, and, if it were, it does not meet the provision of our statute.'' The court refused to follow the Hightower case and held that under the statute of the state of Iowa, which is no different from our own, it makes no difference whether the judgment was by the same court or not.

Indeed, the above decision is in line with our own *Ex parte Green*, 86 Cal. 427 [25 Pac. 21], where the same conclusion is announced. In this connection see, also, the case of *Ex parte Gafford*, 25 Nev. 101 [83 Am. St. Rep. 568, 57 Pac. 484], where it is said: ''Where the defendant is already in execution on a former sentence, and the second sentence does not state that the term is to begin at the expiration of the former, the second will run concurrently with the first, in the absence of a statute providing a different rule. 21 Am. & Eng. Enc. Law, 1075, note 4.''

To this should also be added 16 C. J. 1372, section 3228, as follows: ''When not otherwise directed by statute, or by the sentence of the court, as a general rule the term of imprisonment for which defendant is sentenced begins with the first day of actual incarceration in the prison, unless actual imprisonment is prevented by some cause other than the fault or wrong of defendant. In some jurisdictions, however, it is held that the term of imprisonment shall date from the time sentence is pronounced, unless the convict by his own wrong has prevented it, while in others it begins to operate from the date of entry in the judgment.'' The above quotation is also authority for the proposition that where the defendant is without fault on his own part, the sentence begins to run during the period following the pronouncement of judgment unless the judgment otherwise directs. Certainly within a reasonable time, which in this case would not exceed a few days, it would be the duty of the court to deliver the defendant, who is consenting thereto, to the place for imprisonment. ''In the absence of a statute to the contrary, if it is not stated in either of two or more sentences imposed at the same time that the imprisonment under any one of them shall take effect at the expiration of the others, the periods of time named will run concurrently and the punishments will be executed simultaneously. The fact that the terms of im-

prisonment are to be successive must be clearly and expressly stated.'' (16 C. J. 1374, sec. 3237.)

The case relied upon by petitioner of *Ex parte Lawson,* 98 Tex. Cr. 544 [266 S. W. 1101], is on all-fours with the case before us, the only difference at all being that the statute of Texas makes the term of imprisonment start from the day of pronouncing the judgment, but that provision of the statute does not render the case inapplicable. The fact is conceded in the case at bar that the prisoner was doing everything he could to be properly incarcerated in the proper prison and was responsible on his own account for no delay whatsoever in the premises. Indeed, the state of California by its own statute is in reality one step ahead of the states from which the other cases were taken because of the provisions of section 669 of the Penal Code which specify the only case in which consecutive sentences may be imposed.

The only distinction between the additional line of authorities above relied upon and the case before us is that in the cases above noted the other courts were courts of the same state whereas in the case at bar one was a United States court and the other a state court. But there can be no reason for a distinction or elimination of those authorities upon that ground for in 8 R. C. L., section 243, page 242, it is said: ''Jurisdiction to inflict cumulative punishment is dependent, not on the accident that the offender has been convicted twice or oftener before the same tribunal, but on the fact that distinct violations of the law have been committed by one individual whose malefactions merit separate and, therefore, cumulative penalties.'' (See *Rigor* v. *State,* 101 Md. 465 [4 Ann. Cas. 719, 61 Atl. 631].) In other words, the basis of distinction is not that one court is different from another court, but that the character of the crimes is such that in some cases penalties should be made cumulative and in other cases they should not be so.

The conclusion may be summed up in a word. If this defendant is not to receive credit for the three years spent by him in the federal penitentiary, then it must be held to be within the discretion of a judge of the superior court of the state of California to impose a sentence upon a defendant and defer the taking effect of such sentence for the period of three, or any other given number of years. The

very statement of this proposition shows forth its impossibility. I therefore conclude that so much of the opinion in the case at bar as denies to petitioner credit for the time spent by him in the federal penitentiary under protest is erroneous.