**Robert F. URBANO, No. 37744, Plaintiff,**

v.

**Lloyd W. McCORKLE, Commissioner of Institutions and Agencies of the State of New Jersey, et al., Defendants.**

**Civ. No. 1186–68.**

United States District Court,
D. New Jersey.

July 27, 1972.

---

Purvis Brearley, Trenton, N. J., for plaintiff.

Brown, Connery, Kulp, Wille, Purnell & Greene, by William J. Cook, Camden. N. J., for defendants.

## OPINION

KITCHEN, District Judge:

Robert F. Urbano, an inmate of the New Jersey Prison System, filed this prisoner complaint action on November 8, 1968, against eleven State Prison Officials alleging denials of certain constitutional and civil rights. On October 1, 1971, this court heard oral arguments on defendants' motion for summary judgment and on November 17, 1971, filed a memorandum opinion granting partial summary judgment. *See* Urbano v. McCorkle, 334 F.Supp. 161 (D.N.J. 1971).

The issues that remained viable after that opinion were these:

1. Whether plaintiff Urbano was notified in writing of the charges and nature of the evidence against him and was given a reasonable opportunity to explain away the accusation before being removed from general population and placed in administrative segregation. *See id.* at 166–68.

and

2. If he were not given such a hearing that satisfied the minimum procedural due process require-

ments set out above, what damages flowed from the denial. *See id.* at 168–70.

It was to these two issues that counsel for the plaintiff and defendants were directed during the numerous settlement conferences and pre-trial conferences that were held.

At the pre-trial conference held on June 1, 1972, defendants stipulated that Urbano did not receive the type of hearing that procedural due process required. Therefore, the only issue that remained was the issue of damages.

As items of damages, plaintiff demanded the following:

(a) $59,960 ($9,960 of which represented 664 days of segregation at $15 per day; the other $50,000 was for punitive damages.)

(b) $34 for lost personal property.

(c) $327.60 which plaintiff alleges he lost as a result of being denied legal materials necessary to apply to the United States Supreme Court for a rehearing in an unrelated case.

(d) 41 days lost work credits.

(e) $56.30 lost pay from the work program.

(f) Expungement of the record of segregation from plaintiff's prison records for parole purposes.

As a result of the settlement negotiations, pre-trial conferences and earlier opinion of the court, the following were resolved:

(a) Punitive damages were not in issue. *See id.* at 170.

(b) Defendants stipulated that plaintiff would receive $34.00 for lost personal property.

(c) Plaintiff was not denied access to the courts, therefore this claim was dismissed. *See id.* at 163–65.

(d) Defendants stipulated that plaintiff would receive 42 days work credits.

(e) Defendants stipulated that plaintiff would receive $81.90 lost pay.

(f) Expungement of the record of administrative segregation, which plaintiff claimed would prejudice his parole chances, was not to be considered as this claim was entirely speculative.

Therefore, the sole issue that remained in this cause was whether plaintiff was entitled to compensatory money damages from defendant prison officials for being placed in administrative segregation without having first received the quality of notice required by this court in its earlier opinion at 334 F.Supp. at 168.

## FINDINGS OF FACT

Trial on the remaining issue of compensatory damages was held on July 24, 1972, before this court, sitting without a jury. The facts set out in the earlier opinion are hereby incorporated. The additional findings of fact are as follows:

Urbano was committed to administrative segregation in late October 1968 and remained there until August 1970. Prisoners in administrative segregation are not eligible for minimum security status. They may, however, be released into minimum status, as was Urbano, who was released to Leesburg Prison Farm from his confinement in administrative segregation.

While prisoners in general population ate in the mess hall, prisoners in segregation ate in the cells by themselves. Urbano, however, rarely ate in the mess hall while he was in general population. In addition, he was placed on a special diet in administrative segregation because he had complained of a digestive disorder.

Visiting privileges existed in segregation but the hours were different and the visiting rules were more restricted. Urbano, however, did not claim that any visitors were refused permission to see him because of the more restrictive rules.

Urbano had an extensive collection of legal materials, most of which were stored in his cell when he was in general population. In segregation, however, the volumes were stored elsewhere, so the prison officials assigned a lieutenant of the guards to Urbano to get him legal volumes as necessary. Although Urbano could not visit the prison law library, he was allowed to order a maximum of ten volumes at a time, which were delivered by guards. In his cell, however, was a typewriter, table and reams of paper.

Usually the more dangerous prisoners are in the administrative segregation wing. Therefore, for safety reasons, no cans or bottles, such as those containing food or drink, are allowed in the wing. Also, each prisoner receives a strip-frisk when re-entering the wing.

Finally, as Urbano testified on direct examination, the cells used in administrative segregation were identical to the cells in general population, both in size and condition.

## CONCLUSIONS OF LAW

This court stated in its earlier opinion that a deprivation of a federally protected right is actionable per se and that the purpose of damages under 42 U.S.C. § 1983, was to place plaintiff in the same position, as far as possible, as he would have been had there been no breach of duty. 334 F.Supp. at 169.

Considering all of the evidence produced at trial, it is the finding of this court that Urbano was not placed in any materially different surroundings in administrative segregation than he was while in general population. The awarding of compensatory money damages are therefore unwarranted. The stipulation made by defendants that plaintiff would receive money for lost property and lost wages and would receive credit for lost work credits represent, in the opinion of this court, all of the damages that plaintiff has proved under the facts of this case.

Plaintiff has urged that this court adopt the findings of damages in Sostre

v. Rockefeller, 312 F.Supp. 863 (S.D.N.Y. 1970), *rev'd in part, modified in part, aff'd in part sub nom.*, Sostre v. McGinniss, 442 F.2d 178 (2d Cir.), *cert. denied*, Oswald v. Sostre, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972). *Sostre*, however, is distinguishable from the case at bar.

In that case, District Court Judge Constance Baker Motley found that Sostre was not confined to administrative segregation because of any infraction of the prison rules but rather because Sostre was a Black Muslim, had threatened the warden with lawsuits and had insisted upon expressing his militant ideas in prison. 312 F.Supp. at 869–70. In addition to the findings of "bad faith" on the part of the prison officials, Judge Motley also found that the conditions to which Sostre was subjected in administrative segregation were "physically harsh, destructive of morale, dehumanizing in the sense that it is needlessly degrading, and dangerous to the maintenance of sanity when continued for more than a short period of time which should certainly not exceed 15 days." *Id.* at 868.

The record presented by plaintiff at the trial does not support a finding of either bad faith or physically destructive conditions.

An additional finding of "bad faith" was made by Judge Motley on the basis that Sostre was later confined to segregation by the Warden for assisting a prisoner to prepare a motion. The Warden claimed that this was in violation of prison rules. This confinement, however, was made *after* the Supreme Court decision in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), which had allowed the type activity for which Sostre had been punished.

■ Such bad faith is not present in this case. Counsel for both parties have agreed that the earlier decision of this court was the first decision in this jurisdiction to recognize the rights of a prisoner to be notified in writing of the charges and nature of evidence against him and be given a reasonable opportunity to explain away those accusations before being placed in administrative segregation. Under these circumstances, the rule of Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), should be followed. That case held that the defense of good faith is available to a policeman in an action brought under section 1983. The court stated that "a police officer is not charged with predicting the future course of constitutional law." 386 U.S. at 557, 87 S.Ct. at 1219. This court now holds that prison officials likewise are not charged with predicting the future courses of constitutional law and that the defense of good faith is available to them.

That the prison officials committed Urbano to administrative segregation for good-faith reasons is obvious from the testimony of Captain Sidney Hicks, an officer of the prison guards. Captain Hicks testified that there were rumors of planned boycotts and violence in late October 1968, that several meetings were held by prison officials, that Urbano was mentioned as being a leader of the disturbances and that after Urbano and approximately 32 other prisoners were transferred from Trenton State Prison to other institutions the threats of disturbances ceased and quiet was restored. [For a more detailed recital of the facts surrounding the transfer, see this court's earlier opinion at 334 F.Supp. at 164–65]. Although Urbano alleged various ulterior motives for the transfer, no evidence was produced by plaintiff to show that defendants acted in bad faith.

Therefore, this court, finding that plaintiff was neither confined to administrative segregation for improper reasons nor was he subjected to physically destructive treatment while in segregation, holds that plaintiff is entitled to no compensatory money damages.