**Viola McKINNEY et al.,
Plaintiffs-Appellants,**

v.

**Lee E. DE BORD et al.,
Defendants-Appellees.**

**No. 71–1209.**

United States Court of Appeals,
Ninth Circuit.

Nov. 21, 1974.

502

Mervin C. McKinney, in pro. per.

Anthony L. Dicce, Deputy Atty. Gen. (appeared), Sacramento, Cal., Thos. A. Welch, Brobeck, Phleger & Harrison (appeared), San Francisco, Cal., for defendants-appellees.

Before CHOY * and WALLACE, Circuit Judges, and CURTIS,** District Judge.

## OPINION

CHOY, Circuit Judge:

State prisoner McKinney filed suit under the Civil Rights Act, 42 U.S.C. § 1983, for himself, his mother Viola and another state prisoner Wimberley[1] against 23 employees of the California prison system, a lawbook publishing company and one of its employees. He alleged 10 substantive counts and one count for punitive damages. Of the 10 substantive counts, 9 concerned actions of the prison officials, largely involving allegations of denial of access to various legal materials. Apparently McKinney was substantially involved in giving advice and preparing legal documents for himself and others. In the remaining substantive count McKinney alleged that the lawbook publishing company and one of its salesmen had conspired with prison officials to prevent him from receiving lawbooks his mother had purchased for him. As a result of defense motions for dismissal and summary judgment, the trial court disposed of the case in favor of defendants-appellees. McKinney v. DeBord, 324 F.Supp. 928 (E.D.Cal.1970).

▪ Although the notice of appeal purports to be on behalf of all plaintiffs, it is signed only by McKinney. The notice of appeal must be signed by the party or the party's attorney. Fed.R. Civ.P. 11. See Wilson v. Dixon, 256 F.2d 536 (9th Cir.), cert. denied, 358 U.S. 856, 79 S.Ct. 89, 3 L.Ed.2d 90 (1958). Since McKinney is not an attorney, the purported appeals by Viola McKinney and Wimberley must be dismissed and it is so ordered. Additionally, since McKinney is no longer incarcerated, his request for declaratory judgment and his allegations concerning prison conditions are moot. As to the remaining issues, we agree basically with the disposition by the district court, but we feel it necessary to amplify the lower court's treatment of the case on several of McKinney's claims. With the specific exception discussed below, we affirm.

In count three, McKinney claims that prison officials refused to allow him to show his mother certain catalogues and brochures from lawbook companies. The district court dismissed this count as failing to state a cause of action upon which relief could be granted because it found that McKinney's intention was to have her buy "legal books which he intended to keep in his cell" and that he "was seeking to purchase more books than he was permitted to possess in his cell under applicable prison regulations . . . ." 324 F.Supp. at 932.

▪ We are admonished by the oft-repeated[2] rule of Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), that a complaint should only be dismissed under Fed.R. Civ.P. 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." That, of course, requires that every factual difference be resolved in the plaintiff's favor. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357 at 601 (1969). In line with this rule, we suppose that it is conceivable McKinney could have had a legitimate purpose in having his mother purchase the law books for him—one which would not have entailed violation of the prison regulation limiting at sixteen the number of books a prisoner could have in his cell. He could have wished to replace books in

---

* The Honorable Oliver D. Hamlin, Jr., Senior Judge of the Ninth Circuit Court of Appeals, who was a member of the panel which heard this appeal, died before this case was decided. Judge Choy was designated to substitute for Judge Hamlin.

** The Honorable Jesse W. Curtis, United States District Judge for the Central District of California, sitting by designation.

1. McKinney also attempted to plead a class action, but he neither succeeded nor perfected his right to proceed. See Fed.R.Civ.P. 23(c)(1).

2. See, e. g., DeWitt v. Pail, 366 F.2d 682, 685 (9th Cir. 1966).

his cell with those his mother would purchase, thereby staying within the sixteen book limit; or he might possibly have donated the newly acquired volumes to the prison library, also a permissible form of access to law books. *See* In re Harrell, 2 Cal.3d 675, 697 & n. 23, 87 Cal.Rptr. 504, 518–519, 470 P.2d 640, 654–655 (1970), cert. denied, 401 U.S. 914, 91 S.Ct. 890, 27 L.Ed.2d 814 (1971).

■ But, in construing a complaint most favorably for the plaintiff, a court need not give a plaintiff the benefit of every conceivable doubt; rather, a court is required only to draw every reasonable or warranted factual inference in the plaintiff's favor.[3] And the same rule which requires us to apply "less stringent" standards to *pro se* complaints "than [to] formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), also teaches that we should use common sense in interpreting the frequently diffuse pleadings of *pro se* complainants. *Cf.* Weller v. Dickson, 314 F.2d 598, 601–602 (9th Cir.) (Duniway, J., concurring), cert. denied, 375 U.S. 845, 84 S.Ct. 97, 11 L.Ed.2d 72 (1963).[4]

With this in view, it is clear here that the district court was correct in finding that it was McKinney's intention to purchase books for his cell. McKinney, in both his brief here and his memoranda

filed below, makes it evident that it was never his intention to have his mother replace books in his cell library or to donate them to the prison library.[5] Nowhere does McKinney argue other than that he intended to purchase the books for his cell.

■ Thus, interpreting the third count of McKinney's complaint in a common sense manner, we affirm the district court's dismissal of it. We would be blind to the realities of this case were we to do otherwise and hypothetically assume that McKinney had some other factual possibility in mind in his complaint than that which he repeatedly declares in his arguing papers. *Cf.* S & S Logging Co. v. Barker, 366 F.2d 617, 623 (9th Cir. 1966).

McKinney complains in counts five and seven that prison officials denied his First Amendment rights by seizing letters sent by him to the law book company. These letters protested that the company had not sent 42 books McKinney had previously ordered. Earlier, after a consultation with prison officials revealed that it would violate prison regulations for McKinney to receive the books, the company had declined to send them to McKinney; instead, it shipped them to his mother. At the time the letters were seized, McKinney had already sent several other messages ob-

---

3.  *See* Hiland Dairy, Inc. v. Kroger Co., 402 F.2d 968, 973 (8th Cir. 1968), cert. denied, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969); Ryan v. Scoggin, 245 F.2d 54, 57 (10th Cir. 1957); Ogden River Water Users' Ass'n v. Weber Basin Water Conservancy, 238 F.2d 936, 940 (10th Cir. 1956); International Bank of Miami v. Banco de Economias y Prestamos, 55 F.R.D. 180, 186 (D.Puerto Rico 1972); Herman v. C. O. Porter Machinery Co., 333 F.Supp. 416, 417 (M.D.Pa.1971); *cf.* Margetta v. Pam Pam Corp., 354 F.Supp. 158 (S.D.Cal.1973).

4.  *See also* Smart v. Heinze, 347 F.2d 114, 116 n. 2 (9th Cir.), cert. denied, 382 U.S. 896, 86 S.Ct. 192, 15 L.Ed.2d 153 (1965).

5.  In his brief here McKinney put the third claim as follows:

    *Third Claim*

    At the time of the Third Claim inmates were permitted 8 hardbound volumes (or

hardbound books) in their possession. No limit on "advance sheets" or soft-back law matters existed. Affiant McKinney was denied his right to purchase books "up to the Rule limit" . . . .
Br. at 20. In a memorandum filed in the lower court McKinney negatived any intention to have his mother replace volumes in his cell:
Attorneys for the defendants would have the affiant make use of the mails at rates he cannot afford in order to switch parts of these law books [the ones he wished to have his mother purchase and the ones that were ultimately purchased but not delivered] from time to time. . . . They make no comment on the frustrations of being able to partially research a matter, then, have to wait for two weeks or so for other volumes to be sent to the researcher.
Cl.R. at 399.

jecting to the actions of Bancroft Whitney, and according to the complaint, these had not been suppressed.

■ Recently, in Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Supreme Court ruled on the extent to which prisoner correspondence can be censored or suppressed. It held that censorship regulations "must further an important or substantial governmental interest unrelated to the suppression of expression" and "the limitation of First Amendment freedoms must be no greater than is necessary or essential to the particular governmental interest involved." *Id.* at 413, 94 S.Ct. at 1811.

■ Under this standard we do not think the suppression of the letters violated McKinney's (or the publisher's) First Amendment rights. The letters were sent only to prompt the law book publisher to send the volumes McKinney had ordered. Receipt of the books would have caused McKinney to be in violation of prison regulations. The letters were seized only after it became clear that the correspondence could well prompt violation of a valid prison regulation and hence seizure was an aid to enforcement of the sixteen book limit. Their seizure thus furthered an important governmental interest unrelated to the suppression of expression.

Our conclusion is strengthened by prison regulations approved by the three judge court in *Martinez* which would seemingly legitimate what the prison authorities did here. The regulations, which were cited approvingly by the Supreme Court as "indicative of one solution to the [censorship] problem," allow authorities to censor any outgoing letter if it "concerns plans for activities in violation of institutional rules." Procunier v. Martinez, 416 U.S. at 416 n. 15, 94 S.Ct. at 1813. That proscription is applicable to McKinney's repetitious letters of complaint.

■■ However, the Supreme Court in *Martinez* also required that when delivery of a letter is withheld, certain procedural safeguards be supplied. *Id.* at 417–419, 94 S.Ct. at 1814. The *Martinez* district court had defined the procedural minimum as notice of rejection of the letter to the inmate and an opportunity to protest to a prison official other than the person who originally disapproved of the correspondence, *id.* at 418–419, 94 S.Ct. at 1814; the Supreme Court approved of these safeguards as not "unduly burdensome." *Id.* In McKinney's case no procedural safeguards were provided, which is understandable in that the censorship here substantially predated *Martinez.* Thus it may well be that the failure to provide safeguards was the result of good faith enforcement of the then valid prison rules on mail censorship, a fact which would immunize the conduct of the prison officials under § 1983. *See, e. g.,* Wimberley v. Campoy, 446 F.2d 895 (9th Cir. 1971). But, we cannot so conclude with utter certainty. Since this count was dismissed by way of a Rule 12(b)(6) motion, we are therefore forced, under the principle of Conley v. Gibson, to remand on this limited issue for further proceedings.

McKinney separately appeals the dismissal of his cause of action against the law book publisher and its representative. Assuming timely notice of that appeal was filed, *see* Fed.R.App.P. 3, 4, the appeal is frivolous.

Affirmed in part; reversed and remanded in part.

WALLACE, Circuit Judge (concurring and dissenting):

I concur in Judge Choy's opinion except as to its treatment of count 3. In this count, McKinney claims that prison officials refused to allow him to show his mother certain catalogues and brochures from lawbook companies. The district court dismissed this count as failing to state a cause of action upon which relief could be granted because it assumed that McKinney's intention was to have her buy "legal books which he intended to keep in his cell" and that he "was seeking to purchase more books than he was permitted to possess in his cell under applicable prison regulations . . . .."

McKinney v. DeBord, 324 F.Supp. 928, 932 (E.D.Cal.1970).

Based upon statements in documents other than the unanswered complaint, Judge Choy concludes that McKinney would have put the books to be purchased in his cell. The district court could not have relied upon these statements, however, without treating the motion as one for summary judgment. If it did so, it would be required to allow McKinney to respond. Dale v. Hahn, 440 F.2d 633, 638 (2d Cir. 1971). Nor do I believe the district court could dismiss the complaint as a sham on the basis of pleadings of the defendants without allowing McKinney to respond. Cohen v. Cahill, 281 F.2d 879 (9th Cir. 1960). At no time was McKinney required to or requested to respond. As the court gave no indication it was dismissing other than based upon the complaint itself, I believe we must review the action of the district court under the strict standards referred to by Judge Choy governing dismissals of complaints. We may do so only by referring to the complaint and not to other materials. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); Williford v. California, 352 F.2d 474 (9th Cir. 1965); Marshall v. Sawyer, 301 F.2d 639, 647 (9th Cir. 1962).

I cannot say that the complaint, considered by itself with all factual disputes resolved in favor of McKinney, alleges no facts that could be proved which would support a claim for relief. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although it could be inferred that McKinney did intend to keep the books in his cell, to reach such a conclusion the evidence would have to be viewed most favorably to the defendants. This the district court cannot do in ruling on a motion to dismiss. Fed.R. Civ.P. 12(b)(5).

I would reverse and remand count 3.

CURTIS, District Judge (concurring and dissenting):

I concur with Judge Choy's holding that the trial court's dismissal of count 3 should be affirmed, but I dissent from his holding that the trial court's dismissal of counts 5 and 7 be reversed and remanded.

The appellant, who at the time of filing the complaint was a state prisoner, seeks damages by way of this civil rights action, brought pursuant to the provisions of Title 42 U.S.C. § 1983, for alleged wrongs done to him during his incarceration.

His complaint is quite typical of pro se pleadings. It is a lengthy and disorganized narrative of alleged injustices which he claims have been perpetrated upon him by prison officials. The complaint is replete with irrelevancies and inconsistencies, and the precise nature of his claims often appear vague and obscure. On the whole it appears to be a challenge to the prison officials' authority to enact and enforce disciplinary rules, a contention which is without substantial merit.

The trial court, after patiently sifting through the pleadings and considering each of appellant's claims, decided all eleven counts against him. McKinney v. DeBord, 324 F.Supp. 928 (E.D.Cal.1970). We are in agreement that the decision of the trial judge should be affirmed as to all counts, except 3, 5 and 7. As to the latter we have differing views.

In order to understand the true nature of appellant's complaint in these counts, they must be read in the light of the complaint when read as a whole. Putting the events which appellant alleges in some chronological order, the following appear to be the facts:

Beginning at least as early as January 1969, the appellant undertook to provide legal services for fellow inmates, as well as for himself. In April of that year he began to collect law books, stationery, and other office supplies in his cell for use in connection with the performance of this service.

Prior to June 1, 1969, he alleges that there was in effect a prison rule prohibiting an inmate from having more than eight law books in his cell at any one time. At about that time, the rule was

changed to allow not more than sixteen law books in an inmate's cell. The principal thrust of appellant's complaint is his contention that any such rule limiting the books which an inmate may have in his cell is unconstitutional. On this ground he directly attacked the validity of the rule in count 8, which was dismissed by the trial court as being without merit. We agree that such dismissal was proper.

Most of the other counts relate to the occasions upon which appellant's attempt to obtain these books were frustrated.

In April and May of 1969, he attempted to contact various publishing companies including Bancroft-Whitney in San Francisco, but the prison authorities intercepted his letters. He also complains that he was prevented from showing his mother certain catalogues and brochures of law books which he wished to purchase.

Notwithstanding these allegations, he admits that during the year he was able to accumulate, by way of loan and purchase, sixty-four books which were confiscated from his cell in November and December of 1969. He further admits that from May to November he corresponded with law book publishing companies, apparently obtaining brochures and catalogues. With the knowledge and consent of prison authorities he arranged, presumably through his mother, to purchase forty-two of these books. When delivery was attempted at the prison, officials refused to accept them and ordered them delivered to the appellant's mother. On several occasions she attempted to deliver them to the appellant, but each time she was refused by prison officials and the books were ultimately returned to the publishers.

In count 3, the appellant claims damages because of prison officials' refusal to let him show his mother the law book brochures and catalogues. Judge Wallace holds that a dismissal of this count was improper because the trial judge assumed that the books, which were the subject matter of the purchase, were to be kept in the appellant's cell which, of course, was in violation of the rule. Since the count contains no explicit allegation to this effect, it does not rule out the possible inference that the appellant intended to put the books to some legitimate use. In the face of such a factual dispute, Judge Wallace feels that the trial court should not have dismissed the count without at least giving the appellant an opportunity to respond. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

I concur completely with Judge Choy's holding that in light of the allegations in the complaint, taken as a whole, the trial court was well within its discretion in construing count 3 to refer to the purchase of law books for use in appellant's cell. Furthermore, appellant's response to the motions for dismissal and motions for summary judgment was the filing of an affidavit stating:

"Your affiant is willing to stand on his well-pleaded complaint and is further willing to take the matter, as it now stands prepared, to [sic] Court of Appeals, therefore, no additional pleading will be filed. Plaintiffs stand or fall on their well-pleaded drafted Civil Right [sic] Act complaint. . . ."

In counts 5 and 7, appellant alleges that certain letters addressed to law book publishers were intercepted and suppressed. I agree with Judge Choy that for the reasons set forth in his opinion the interception and suppression of these letters was permissible unless the officers were acting in bad faith. Whereas, Judge Choy would remand for a clarification of the issue of good faith, I would affirm in reliance upon the presumption "that official duty has been regularly performed." Cal.Evid.Code § 664 (West 1966).

It has long been the law of the State of California that a complaint seeking to charge official misconduct must negative the presumption of regularity of official action as declared by the Code. Los Angeles Athletic Club v. City of Long Beach, 128 Cal.App. 427, 17 P.2d 1061 (1st Dist. 1932). *Cf.* In re Sichofsky, 201 Cal. 360, 368, 257 P. 439 (1927).

The same presumption exists for Civil Rights Act cases of this sort, Urbano v. McCorkle, 346 F.Supp. 51, 54 (D.N.J. 1973), aff'd 481 F.2d 1400 (3d Cir. 1973).

The nearest the plaintiff comes to alleging anything in the way of bad faith first occurs in the fifth claim where he alleges "Letters to the Bureau of N. Affairs was [sic] removed from the mails by Sergeant K. W. Miranda. Letters to M. Neil Smith, Bancroft-Whitney local representative, was [sic] also removed. Letters to Bancroft-Whitney were stolen from the mails. Letters to postal authorities were stolen from the mails in an attempt to thwart a postal investigation of the charges that plaintiff had lodged against Miranda and others."

Although plaintiff had a clear opportunity to allege bad faith, he carefully avoided doing so, alleging only that the defendants removed the letters and that certain letters were stolen by unnamed persons. Again in the seventh claim he alleges that certain letters "have not been allowed to leave the institution." He again alleges that he "sought to send other letters to Bancroft-Whitney through the regular mail channels and these were summarily returned and rejected . . ." by prison officials. In my view these allegations fall far short of charging bad faith or misconduct sufficient to negative the presumption of regularity of official action.

Furthermore, trial judges should have broad discretion in interpreting the pro se pleadings of prisoners, especially in civil rights actions. As Judge Duniway said in his concurring opinion in Weller v. Dickson, 314 F.2d 598, 601–602 (9th Cir.), cert. denied, 375 U.S. 845, 84 S.Ct. 97, 11 L.Ed.2d 72 (1963):

> "I also think that the district judge should have a broader discretion in civil actions brought by prisoners against their jailers than in other civil actions. We know from sad experience with habeas corpus and 2255 cases that imprisoned felons are seldom, if ever, deterred by the penalties of perjury. They do not hesitate to allege whatever they think is required in order to get themselves even the temporary relief of a proceeding in court. The prospect of amercing their jailers in damages must be a most tempting one, even if it will not get them their freedom. The disruption of prison discipline that the maintenance of such suits, at government expense, can bring about is not difficult to imagine."

I can only conclude that the dismissal of counts 3, 5 and 7 was proper and, at least, the trial court, in doing so, was not clearly in error.

I would affirm.