# JUNE 13, 1945

Ex Parte J. L. Cox

No. 23107. Delivered April 25, 1945.
Rehearing Denied June 13, 1945.

The opinion states the case.

*Baskett & Parks,* of Dallas, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

On June 5, 1940, relator entered his plea of guilty in the Criminal District Court of Dallas County in three cases charging him with passing a forged instrument. Judgments of conviction were entered and sentences were pronounced the same date, the sentence in each case made to begin on said June 5, 1940. The sentences in the three cases mentioned, therefore, ran concurrently. Notwithstanding his pleas of guilty relator appealed all three of his cases to the Court of Criminal Appeals and was released from custody pending appeal upon executing appeal bonds or recognizances in the three cases. On December 4, 1940, the Court of Criminal Appeals affirmed the judgments in two of the cases, and dismissed the appeal in the other one. Mandates were issued in each of the three cases on December 20, 1940, directing the trial court to execute the judgments of the Court of Criminal Appeals. Relator did not appear in response to his appeal bonds and they were forfeited. On January 5, 1942, the Clerk of the Criminal District Court of Dallas County issued a capias in each of the cases mentioned and placed same in the hands of the sheriff of Dallas County, commanding him,—and we here quote:

"* * * to take the body of James Lleldon Cox and him safely keep, so that you have him before the Honorable Criminal District Court of Dallas County, Texas, at the court house thereof in the City of Dallas, instanter, then and there to answer the State of Texas in a charge by indictment, wherein said James Lleldon Cox is charged with the offense of forgery and passing forged instrument. * * *"

The capiases were not executed until the 22d day of August, 1942, and then under the circumstances hereafter stated. On May 23, 1942, while relator was still at large after the three State cases had been disposed of in the Court of Criminal Appeals a complaint was filed before the United States Commissioner at Dallas charging him with violation of the Selective Service Act. The capias issued under it was returned not executed. Later however, in August, 1942, and prior to the 22d of said month relator was apprehended in Salt Lake City, Utah, and was returned to Dallas on a Federal Court removal order on August 22, 1942. His bond to await the action of the Federal Grand Jury was fixed at $5,000.00. He could have made such bond and been released but for the three State cases against him. The capiases in said three cases which had been issued on January 5, 1942, were returned by the sheriff of Dallas County as "executed this 22d day of August, A. D. 1942, by arresting the within named defendant in the Dallas County Jail." In September, 1942, the Federal Grand Jury indicted relator, and on

September 23, 1942, he plead guilty in the Federal Court and was given three years in the United States Penitentiary at Leavenworth, Kansas. The sentence in the Federal Court was not made cumulative to those in the State court. Immediately after his sentence in the Federal Court on September 23, 1942, relator was taken by the United States Marshal to the Federal Penitentiary at Leavenworth, Kansas, and was confined there until January 13, 1945, having fully served said three year Federal sentence, less the "good time" he was credited with. On said January 13, 1945, the Federal officers at the Leavenworth Penitentiary delivered relator to the Sheriff of Dallas County, who immediately transferred him to the county jail of that county where he was confined until January 28, 1945, at which time he was delivered to the agent of the Texas State Penitentiary under and by virtue of three commitments, and was taken to said penitentiary and has been confined there since such date.

At the time relator was brought back from Utah by the Federal authorities both Federal and State prisoners were lodged in the Dallas County Jail. The Sheriff of Dallas County at the time involved had a contract with the Federal Government by which he had charge of Federal prisoners. They were kept in the same jail with the State prisoners, and were cared for, fed and furnished bedding, for which services the Federal Government paid the Sheriff of Dallas County.

The Honorable Winter King certifies his conclusion from the facts that after the capiases were served on relator on August 22, 1942, the Sheriff was holding him as a joint prisoner of the United States and the State of Texas.

On February 1, 1945, relator obtained from the Hon. Winter King, Judge of the Criminal District Court of Dallas County, a writ of habeas corpus, upon which relator claims that the sentence of three years' imprisonment in the three State cases ran concurrently with the three year sentence in the Federal penitentiary, and that he is entitled to release from the State penitentiary. The trial judge ascertained and certified the facts as herein related, and made the writ returnable to this Court in accordance with the Act of the 48th Legislature, page 233, Chapter 354, amending Art. 119, C. C. P.

The question presented is not free from difficulty. The confusion arises from the dual capacity in which the Sheriff of Dallas County acted as the custodian of both United States and

State prisoners, which confusion would likely not have arisen under other circumstances. As supporting his claim that he served his three year sentence in the State cases at the same time he was incarcerated in the Federal Penitentiary at Ft. Leavenworth relator relies largely upon Ex parte Lawson, 98 Tex. Cr. R. 544, 266 S. W. 1101. In that case accused had been convicted in the Uniьd States Court and was serving a term of imprisonment under that judgment. The Federal authorities delivered him to the State authorities and he was convicted in the State court of an offense against the State laws. The trial judge, with knowledge of the Federal judgment did not make the sentence in the State case cumulative of that in the Federal case. Not having done so, it implied an intent that the sentence in the State court should run concurrently with the sentence in the Federal case. Lawson was immediately re-delivered to the Federal authorities. If relator in the present case had been surrendered to the State authorities and had served his term in the State cases, and then been taken to the Federal penitentiary and sought relief because the sentence in the Federal Court had not been made cumulative, the same question decided in Lawson's case would be present. The opinion in Lawson's case quotes Art. 882 C.C.P. as providing that "the term (of imprisonment) shall commence from the time of the sentence, or, in case of appeal, from the time of the affirmance of the sentence."

The Lawson case was adverted to in a California case, Ex parte Sichofsky, 257 Pac. 439, 53 A.L.R. 615, but was not followed, a difference in the statutes of the two states being noted. We have the same situation now arising from changes in our own statute. The Lawson case was decided in 1924. In the 1925 Revision of our Code of Criminal Procedure, Art. 822, as it formerly read passed out of the statute, and in lieu thereof it was provided in Art. 819, C.C.P. as follows:

"When the clerk of any court from whose judgment an appeal has been taken in felony cases wherein bail has been allowed shall receive the mandate of the Court of Criminal Appeals affirming such judgment, he shall immediately file the same and forthwith issue a capias for the arrest of the defendant for the execution of the sentence of the court, *which shall recite the fact of conviction, setting forth the offense and the judgment and sentence of the court, the appeal from and affirmance of such judgment and the filing of such mandate, and shall command the sheriff to arrest and take into his custody the defendant and place him in jail and therein keep him until delivered to the proper penitentiary authorities,* as directed by said sentence.

The sheriff shall forthwith execute such capias as directed." (Italics ours.)

So far as we have discovered the article above quoted has never been amended or repealed. But by Acts 42d Legislature, Chapter 207, Art. 775 C.C.P. was amended to read, in part, as follows:

"* * * Where an appeal is taken and the defendant is at large on bond or recognizance, when the case is affirmed the clerk of the trial court, on receipt of the mandate from the Clerk of the Court of Criminal Appeals, shall issue a *commitment, and when the defendant is taken into custody under such commitment,* the officer executing same shall endorse thereon the date the defendant was taken into custody, *and the endorsement on this commitment shall constitute the date on which the sentence shall begin to run,* and such defendant named in the commitment shall be admitted to the penitentiary by virtue of such commitment." (Italics ours.)

Again referring to the California case, Ex parte Sichofsky (supra), it is pointed out in the opinion therein that under Art. 882 of the Texas C.C.P. as it then read the term of a convicted felon in Texas commenced from the time of his sentence, or the date of affirmance (in case of appeal), whereas, under the California statute the term of imprisonment commenced to run upon the actual delivery of the convict at the place of imprisonment. In calling attention to peculiar situations which might arise if Sichofsky's contention was upheld the California court makes an observation so pertinent to the case now before us that we cannot refrain from quoting, as follows "* * * An equally absurd situation would arise in a case where a criminal, who had been tried and convicted for an offense against our State laws, but who had escaped before his actual incarceration in our state prison and while thus a fugitive from justice had committed a crime against the laws of another jurisdiction and had been there arrested, indicted, convicted, and sentenced to prison in that jurisdiction, would be also serving time there for the crime for which he was convicted and sentenced here, but for which, by reason of his escape, his actual commitment in the state prison had been rendered for the time being impossible."

The situation that the California court anticipated might arise is the precise thing that did happen in the case now being considered. Of course, when the State court pronounced sen-

tence upon relator it could not be made cumulative of the sentence subsequently received in the Federal Court. It could not be anticipated that relator would in violating the terms of his appeal bond also violate a Federal statute and be prosecuted, convicted and sentenced thereunder.

It is our view that under the circumstances here present the effect to be given the capiases from the State court served upon the relator while in the Dallas County Jail after his return there as a Federal prisoner was to subject him to authority of the State court when the Federal prosecution and sentence thereunder had terminated, and should not be construed as asserting a State right to the prisoner in opposition to Federal authority. Certainly the capiases in question conformed to neither the provisions of Art. 819 C.C.P., nor Art. 775 C.C.P. (supra). The sheriff had no authority thereunder to tender him to the penitentiary authorities of the State, and they would not have been warranted in receiving him into the penitentiary under said capiases. We may assume that when he was so received as a State convict after his liberation from the Federal prison it was upon commitments issued from the State court which complied with the provision of either Art. 819 or 775 C.C.P. When the Sheriff of Dallas County served the capiases upon relator in jail on August 22, 1942, he did not take relator *"into custody under such commitment"* as contemplated in Art. 775 C.C.P., nor as stipulated in Art. 819 C.C.P. We find nothing in the facts as presented which would warrant us in reaching the conclusion that the Federal Government waived any of its rights in favor of the State Government, nor that the State authorities either actually or impliedly intended to regard the serving of the Federal sentence by relator as at the same time a satisfaction of the sentences in the State convictions. As we regard it, the rule as to concurrent sentences has no application under the peculiar facts here presented, but furnishes an exception to the general rule.

We conclude that relator is not entitled to enlargement, but that he should be remanded to the Penitentiary authorities, and it is so ordered.

#### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

In his motion for rehearing appellant again discusses a question which was given full consideration in the foregoing opinion.

We do not find it necessary to re-discuss the question for, in our view, the position taken is eliminated by the circumstances of the case.

Appellant seeks his release from the penitentiary because the clerk issued a capias which he says should not be construed to be a commitment. He has not served his term, nor did he serve another term running concurrent with the one for which he is now held. We have found that the irregularity is not sufficient, because of the condition of the record, to release him. In reply he says that it is the fault of the officers that the instruments were not complete and further contends for a liberal construction of the capias so as to give it the office of a commitment. If the State were holding him on such ground and had failed to make a record sufficient for the purpose, the question might be as contended by appellant. In the present situation, however, he is seeking release on a record which might avail him had it been different. His own wrongful conduct in forfeiting a bond after his cases had been affirmed brought about this situation and he is not in position to complain that the clerk of the District Court failed to issue the paper which the law directs. The State could not secure possession of him at the time the paper was served on him. It did not do so. He had committed a crime for which the Federal Government arrested him and held him in custody. The instrument did not have the effect of committing him to the penitentiary at the time it was served but only became effective, if it did, after he had satisfied the demands of the Federal Government.

The question thus presented is not without its difficulties and was so viewed by us on the original submission. We are not able now to recede from the position taken and expressed in the opinion affirming his case.

The motion for rehearing is overruled.